OPINION
{¶ 1} This appeal is taken from a final judgment of the Lake County Court of Common Pleas finding appellant, Matthew Kish, guilty of felonious assault. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On February 28, 2000, the Lake County Grand Jury indicted appellant on one count of felonious assault, in violation of R.C.2903.11(A)(1), and one count of intimidation of a witness in a criminal case, in violation of R.C. 2921.04(B). Appellant waived his right to be present at the arraignment, and the trial court entered a plea of not guilty on his behalf.
 {¶ 3} Appellant's trial began on November 14, 2000. The first person to testify was the victim, Suzanne Mitzo Mysliwczyk ("Mitzo"). She testified that on the evening of November 8, 1999, she and her young son met her then boyfriend, Keven Mysliwczyk ("Mysliwczyk"), at Grumpy's Lounge ("Grumpy's") in Eastlake, Ohio. According to Mitzo, she was sitting beside Mysliwczyk having a drink when she noticed two men, whom she did not recognize, at the other end of the bar "getting kind of loud, rowdy." When Mysliwczyk left his seat, Mitzo assumed that he was going to the restroom, which was in the direction of the two men.
 {¶ 4} Shortly thereafter, however, Mitzo heard a disturbance and looked over to where Mysliwczyk had walked. When she did, Mitzo saw one of the two men, later identified as Eric Petrus ("Petrus"), punching her boyfriend. Mitzo approached the men and grabbed Petrus by the back of his shirt. After grabbing Petrus, Mitzo testified that she was hit and "went flying towards the popcorn machine." As she was getting up, Mitzo observed Mysliwczyk and Petrus still fighting. However, before Mitzo could completely regain her feet, she was kicked in the face and hit several times.
 {¶ 5} Mitzo was taken to the hospital where doctors determined that she had suffered an orbital fracture. While at the hospital, Mitzo provided a statement to the police in which she stated that Petrus was the person who had assaulted her. At appellant's trial, however, Mitzo testified that she was confused when she gave her statement to the police, and after further reflection, realized that Petrus could not have been the person striking her because after being knocked to the floor she saw him and Mysliwczyk still fighting. As a result, Mitzo testified that she did not know who hit her.
 {¶ 6} The state next presented testimony from two other people present at the bar during the altercation who essentially corroborated Mitzo's testimony. Ronald J. Juliano ("Juliano") testified that when he approached Mysliwczyk and Petrus fighting on the barroom floor, he saw appellant punch Mitzo, knocking her to the ground, and then kick her in the face when she tried to get up. Similarly, Janet A. Pekarcik ("Pekarcik"), Juliano's girlfriend, testified that while Petrus and Mysliwczyk were brawling, she saw appellant hit Mitzo and, while she was on the floor, kick her in the face.[1]
 {¶ 7} Mysliwczyk also testified as to what occurred during the evening in question. He told the jury that after Mitzo and her son arrived at Grumpy's, he heard appellant and Petrus talking loudly and using profanity. As a result, Mysliwczyk approached the two men and asked them to watch their language because there was a child in the bar. Instead of quieting down, Mysliwczyk testified that Petrus punched him the face and the two men began to fight. Mysliwczyk claimed that he and Petrus never separated until appellant pulled Petrus off him before leaving the bar.
 {¶ 8} The final witness to testify for the state was an employee of Grumpy's, Audra Adair Myers ("Myers"). Myers testified that before the altercation began, she noticed appellant and Petrus talking loudly and asked them to lower their voices. Soon after Mitzo and her son arrived at the bar, Myers watched Mysliwczyk approach the two men and ask Petrus "if he could keep the swearing down." According to Myers, Petrus then became belligerent, and the two men began fighting.
 {¶ 9} After the fight started, Myers turned to call 911 and did not actually see who struck Mitzo. However Myers testified that when she turned back around, she saw Mitzo using a barstool to pull herself off of the floor and appellant approximately one foot away from her. He was walking back to where Petrus and Mysliwczyk were fighting.
 {¶ 10} At the conclusion of the state's case-in-chief, the trial court, upon appellant's motion, dismissed the single count of intimidation of a witness in a criminal case. The trial then proceeded on the remaining charge.
 {¶ 11} Appellant testified in his own defense and told the jury that after Mysliwczyk and Petrus began fighting, he and several other people at the bar tried to separate the men. As he was trying to separate them, appellant claimed he was hit in the back of the head and knocked to the barroom floor. When he got up, appellant testified that he pulled Petrus off of Mysliwczyk and the two men then left the bar. Appellant denied ever striking Mitzo or Mysliwczyk during the fight.
 {¶ 12} Appellant also presented the testimony of Patrolman Phillip Browser ("Patrolman Browser") of the Wickliffe Police Department. Patrolman Browser testified that upon responding to Grumpy's, he spoke to several people who witnessed the fight. One of the people Patrolman Browser spoke to during his investigation, Greg Trumpour, told the officer that Petrus had knocked Mitzo to the ground, and that while she was down there, kicked her in the face.[2]
 {¶ 13} After hearing all of the testimony, the jury found appellant guilty of felonious assault. Following the verdict, the trial court referred appellant to the probation department for the preparation of a presentence investigation report. On February 6, 2001, the trial court sentenced appellant to a three-year prison term.
 {¶ 14} From this judgment, appellant filed a timely notice of appeal with this court. He now advances the following assignments of error for our consideration:
 {¶ 15} "[1.] Mr. Kish's conviction for felonious assault is against the sufficiency and/or weight of the evidence presented at trial.
 {¶ 16} "[2.] Appellant was denied a fair trial by reason of improper argument by the prosecuting attorney.
 {¶ 17} "[3.] Appellant was denied the effective assistance of trial counsel.
 {¶ 18} "[4.] The Trial Court erred, to the prejudice of Appellant, when it granted Appellant's Motion for Acquittal on the intimidation charge but failed to inform the jury as to the reasons that they were no longer to consider that charge in its deliberations."
 {¶ 19} Under his first assignment of error, appellant argues that his conviction is against the sufficiency and/or weight of the evidence. Appellant maintains that "there is absolutely no evidence" establishing that he was responsible for Mitzo's injuries. Instead, appellant submits that the "vast majority of evidence" proved that he had attempted to break the fight up, and that he otherwise had no involvement in the altercation.
 {¶ 20} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 21} On the other hand, when reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 22} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 23} To convict appellant of felonious assault, the state was required to prove that he knowingly caused physical harm to another. R.C. 2903.11(A)(1). As we noted above, appellant claims that there is no evidence to establish that he was responsible for Mitzo's injuries. Specifically, appellant maintains that several of the witnesses provided testimony that was inconsistent with their statements given to the police. Based on these inconsistencies, appellant believes that a question was raised as to whether it was he or Petrus who caused the serious injury to Mitzo's eye.
 {¶ 24} After conducting an exhaustive review of the record, this court concludes that, when viewed in a light most favorable to the state, there was substantial evidence upon which the trier of fact could reasonably conclude that appellant knowingly caused Mitzo physical harm. No one disputes that Mitzo suffered a serious injury to her eye. Nevertheless, appellant correctly notes that there were inconsistencies concerning the details of the altercation.
 {¶ 25} For example, immediately after the fight, both Mitzo and Mysliwczyk told the police that Petrus was the person who had punched Mitzo in the face. At appellant's trial, however, Mitzo and Mysliwczyk testified that when they gave their statements to the police on the night in question they had not previously known the identity of either Petrus or appellant, and were confused and unsure as to exactly what had happened in the bar. Furthermore, two other witnesses at trial told the jury that appellant kicked Mitzo in the face while she was attempting to regain her feet, and a third saw appellant one-foot away from Mitzo while she was pulling herself off the ground. Also, in arguing that he was not responsible for the injuries, appellant fails to take into consideration that both Mitzo and Mysliwczyk testified that the only other person involved in the fight, Petrus, was engaged with Mysliwczyk the entire time.
 {¶ 26} As for appellant's argument that the jury's verdict was against the manifest weight of the evidence, after reviewing the entire record and weighing the evidence presented along with all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's conviction. Without question, the weight of much of the testimony presented rested on the credibility of the witnesses. However, the credibility of each witness was a critical issue for the jury to decide, and this court will not disturb those findings on appeal. State v. Ready (2001), 143 Ohio App.3d 748.
 {¶ 27} In a case involving a barroom brawl, some inconsistencies in the evidence are to be expected. More often than not, no one individual observes everything that occurred or later is able to relay a complete and concise recitation of the events. As a result, the jury, as the trier of fact, is required to sift through the conflicting evidence and determine what is true and what is false. In order to evaluate the credibility of the evidence, jurors are allowed to make reasonable inferences using the common experience of mankind as the tests of truthfulness used in their everyday lives. See, generally, 4 Ohio Jury Instructions (2002), Sections 405.01 (Evidence and inferences) and 405.20 (Credibility). Appellant's first assignment of error is without merit.
 {¶ 28} In assignment of error two, appellant argues that he was denied a fair trial as a result of improper remarks made by the prosecutor during closing argument. He claims that the comments were prejudicial because the prosecutor was attempting to influence the jury by stating his personal beliefs with respect to the credibility of the witnesses and appellant's guilt.
 {¶ 29} Although appellant submits that a review of the prosecutor's closing argument would reveal "numerous instances where the Prosecutor interjected her [sic] personal beliefs[,]" he provides the following as examples:
 {¶ 30} "*** I am convinced that after you hear what the law is in this case, you don't know what it is now, your decision will be a lot easier and that you are going to be convinced beyond a reasonable doubt that [appellant] is guilty of each and every element of felonious assault.
 {¶ 31} "***
 {¶ 32} "I submit to you ladies and gentlemen, Ron Juliano and Janet Pekarcik, they told you what happened at that bar. If they had not seen what happened, the State wouldn't have any evidence in this case. I would submit to you, their testimony alone, their testimony alone in this case, is sufficient to prove [appellant's] guilt beyond a reasonable doubt.
 {¶ 33} "***
 {¶ 34} "This is about as good as any evidence gets in this type of case. The evidence — we have sober witnesses for one. This is a good case.
 {¶ 35} "***
 {¶ 36} "I would submit to you that you can walk out here firmly convinced of the truth of that charge.
 {¶ 37} "***
 {¶ 38} "I would submit, ladies and gentlemen, this is as good a bar fight that you are going to get.
 {¶ 39} "***
 {¶ 40} "*** [I]t is our position that this case, there was proof in this case to establish beyond a reasonable doubt [the elements of felonious assault].
 {¶ 41} "***
 {¶ 42} "I would submit to you, ladies and gentlemen, again the evidence of two witnesses that were present here, you can take — take the other testimony and throw it out the window. It doesn't matter.
 {¶ 43} "***
 {¶ 44} "[Appellant's attorney] promised you, he told you in his opening statements, [appellant's attorney] told you the evidence is going to show that his client did nothing. `My client didn't do anything.' *** Is that what the evidence showed? He must have been listening to different evidence than I was. From what I had heard, his client did something. Something serious, ladies and gentlemen. He hurt that woman bad.
 {¶ 45} "***
 {¶ 46} "All we need to prove is that [appellant] kicked her in the face. Don't need to know what happened by the popcorn machine, what happened down there, what the argument was about, whether profanities were used. You don't have to be clear on those things. All peripheral. The whole thing is the kick to the face. If you believed it happened, he is guilty. It is that simple.
 {¶ 47} "***
 {¶ 48} "I would ask you, ladies and gentlemen, respectively request you to return a jury verdict of guilty in this case. It is the only jury verdict in this case. It is the right verdict based on what the evidence showed and what the law is in this case."
 {¶ 49} With one exception, appellant failed to object to the alleged misconduct he now complains about. Therefore, he has waived all but plain error with respect to those particular remarks. Crim.R. 52(B);State v. Robb, 88 Ohio St.3d 59, 86, 2000-Ohio-275; State v. Keith,79 Ohio St.3d 514, 518, 1997-Ohio-367. Plain error is an obvious error or defect in the trial proceedings that affects a substantial right. State v. Jones (Aug. 27, 1999), 11th Dist. No. 96-A-0009, 1999 Ohio App. LEXIS 3979, at 8. Under this standard, a reversal is warranted only when the outcome of the trial clearly would have been different without the error. Keith at 518.
 {¶ 50} In order to make a finding of prosecutorial misconduct, a reviewing court must determine whether the challenged statements were improper, and if so, whether the remarks affected the defendant's substantial rights. State v. Smith, 87 Ohio St.3d 424, 442,2000-Ohio-450. A conviction will not be reversed because of prosecutorial misconduct, however, unless it so taints the proceedings that a defendant is deprived of a fair trial. Id.
 {¶ 51} There is no question that an attorney should avoid expressing personal beliefs or opinions with respect to the guilt of the accused, as well as the credibility of witnesses. State v. Lott (1990),51 Ohio St.3d 160, 166. This is especially true in the case of a prosecutor in a criminal case. State v. Rahman (1986), 23 Ohio St.3d 146,154.
 {¶ 52} That being said, it is not improper for a prosecutor to comment upon the evidence in his closing argument and to state the appropriate conclusions to be drawn therefrom. Accordingly, a prosecutor may comment fairly on a witness' credibility based upon his or her in-court testimony. State v. Keene, 81 Ohio St.3d 646, 666, 1998-Ohio-342
(holding that the prosecutor's description of a witness as "one of the best witnesses any of us has seen in quite awhile" was properly supported by the record). However, as we noted above, a prosecutor may not state his or her own unsupported belief as to whether or not a witness is telling the truth. State v. Smith (1984), 14 Ohio St.3d 13. Such actions "invade *** the province of the jury, and invite *** the jury to decide the case based upon the credibility and status of the prosecutor." Statev. Draughn (1992), 76 Ohio App.3d 664, 670.
 {¶ 53} Nevertheless, in evaluating the conduct in this case, we are mindful that prosecutors are granted wide latitude in closing arguments. Rahman at 154. Furthermore, this court will consider the effect of any improper statement in the context of the entire trial.State v. Keenan (1993), 66 Ohio St.3d 402, 410.
 {¶ 54} Turning to the case at bar, although certain remarks made by the prosecutor came close to misconduct, when taken as a whole, there was no error, let alone plain error. During his trial, appellant's strategy was to repeatedly attack the credibility of the state's witnesses. As a result, we see no problem with emphasizing to the jury that the witnesses who said they saw appellant hit and kick Mitzo were sober, and that they were in a position to observe what was happening around them. Moreover, the prosecutor never stated his personal opinion as to the credibility of appellant or any other witness.
 {¶ 55} Next, appellant accuses the prosecutor of advising the jury that he was required to prove his innocence. After looking at the statement in question, we conclude that the prosecutor never suggested that appellant had the burden of proving his innocence. Even if that were true, the trial court instructed the jury that the state was required to prove appellant's guilt beyond a reasonable doubt.
 {¶ 56} Appellant also argues that the prosecutor misled the jury when he stated that all the state had to prove was that appellant kicked Mitzo in the face. This is an oversimplification of the prosecutor's comments. When read in context, it is clear that the prosecutor was simply reminding the jury that the events surrounding the kick to the face were immaterial as to whether appellant was guilty of felonious assault.
 {¶ 57} Appellant maintains that the prosecutor improperly stated that he had intimidated one of the witnesses. Appellant's attorney objected to this remark, and the trial court sustained the objection. As such, without evidence to the contrary, we must assume that the jury disregarded this statement.
 {¶ 58} Finally, appellant claims that the prosecutor should not have told the jury that he showed no concern over Mitzo's injuries. Appellant argues that he fully cooperated with the police investigation, and that the prosecutor's remarks amounted to a character assassination intended to inflame the passions of the jury and influence its verdict.
 {¶ 59} The uncontroverted facts show that as soon as Petrus and Mysliwczyk were separated, Petrus and appellant left Grumpy's. Moreover, there had been testimony indicating that when appellant learned that Mitzo had been seriously injured during the fight, he immediately denied any involvement. Frankly, the jury could have interpreted this reaction as being consistent with appellant's later claim that he was not involved in the fight. Nevertheless, we conclude that telling the jury that appellant showed no remorse was one permissible interpretation of the previously admitted evidence.
 {¶ 60} We find nothing improper or unfairly prejudicial about the prosecutor's closing argument, let alone something that rises to the level of plain error. Despite the exuberance of the prosecutor, any actual prejudicial effect was de minimus, particularly when viewed in context of the entire trial. As a result, this court concludes that the prosecutor in this case did not commit prosecutorial misconduct. Appellant's second assignment of error is not well-taken.
 {¶ 61} Under his third assignment of error, appellant argues that he was denied his constitutional right to effective assistance of counsel. In particular, appellant argues his attorney should have introduced a witness statement to the jury, failed to present evidence that he cooperated with the police investigation, failed to object to inappropriate comments made by the prosecutor, and failed to request a jury instruction on self defense or defense of another.
 {¶ 62} The standard for determining whether or not a criminal defendant has been afforded his right to effective assistance is well-settled in Ohio. To be successful on such a claim, a criminal defendant must meet the two-pronged test originally articulated by the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668, and subsequently adopted by the Supreme Court of Ohio inState v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, State v. Swick, 11th Dist. No. 97-L-254, 2001-Ohio-8831, 2001 Ohio App. LEXIS 5857, at 4.
 {¶ 63} First, a defendant must be able to show that his trial counsel was deficient in some aspect of his representation. Bradley at 141. This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the "counsel" guaranteed by both the United States and Ohio Constitutions. Id.
 {¶ 64} Second, a defendant must be able to show that the deficient performance prejudiced his defense. Id. at 142. This requires a showing that there is "a reasonable probability that, were it not for counsel' errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 142.
 {¶ 65} There is a strong presumption in Ohio that a licensed attorney is competent. State v. Smith (1985), 17 Ohio St.3d 98, 100. Accordingly, to overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance. State v. Smith (Dec. 22, 2000), 11th Dist. Nos. 99-P-0039 and 99-P-0040, 2000 Ohio App. LEXIS 6115, at 18.
 {¶ 66} Debatable strategic and tactical decisions will not form the basis of a claim for ineffective assistance of counsel, even if there had been a better strategy available. State v. Phillips, 75 Ohio St.3d 72,85, 1995-Ohio-171. In other words, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel. Swick at 4.
 {¶ 67} Appellant first argues that at trial, his attorney should have taken further action to introduce a statement given to the police by Richard Thorpe ("Thorpe") because, according to appellant, the statement identified Petrus as the person who hit Mitzo. Appellant maintains that once his attorney presented Thorpe with his statement and it failed to refresh his recollection, his attorney should have made another attempt to bring Thorpe's statement to the attention of the jury because it provided another example of a witness implicating Petrus in Mitzo's assault.
 {¶ 68} During appellant's trial, Thorpe testified that although he saw Mitzo attempting to break up the fight, he did not see anyone punch or kick her. This testimony conflicted with Thorpe's earlier written statement in which he stated that "[t]he attacker hit my friend's girlfriend and my friend." When appellant's attorney attempted to refresh Thorpe's recollection on direct examination with his prior statement, Thorpe denied that it refreshed his recollection with regard to whether he saw someone hit Mitzo. Appellant's attorney subsequently made no further attempts to admit the substance of the statement into evidence.
 {¶ 69} Appellant proposes that his attorney should have pursued other alternatives to present the jury with Thorpe's statement. Specifically, he argues that the contents of the statement could have been introduced through Evid.R. 612 or Evid.R. 803(5), or in the alternative, his attorney should have moved the trial court to declare Thorpe a hostile witness and cross-examined him with respect to the prior inconsistent statement.
 {¶ 70} Evid.R. 612 provides in part that "if a witness uses a writing to refresh his memory for the purpose of testifying, *** an adverse party is entitled to *** inspect it, cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." Under the rule, a witness reviews his prior statement to refresh his memory and then testifies on the basis of his present knowledge of the relevant facts. Clearly, Evid.R. 612 is not applicable here because Thorpe was able to recall the events on the night in question and did not use the statement to refresh his recollection.
 {¶ 71} If a witness reviews a prior statement and it fails to refresh his recollection, the statement may be admissible under Evid.R. 803(5) as a "past recollection recorded." This doctrine, however, only applies when "the witness `has insufficient recollection to enable him to testify fully and accurately.'" Kennan at 412. Specifically, to admit a statement as a "past recollection recorded," a party must establish that:
 {¶ 72} "1) the witness has insufficient memory to accurately testify to crucial information; 2) that the witness can show through their testimony that the past recollection recorded was made or adopted when the matter was fresh in the witness's memory; and 3) that the past recollection recorded correctly reflects the knowledge the witness had at the time it was recorded." State v. Perry, 147 Ohio App.3d 164, 171,2002-Ohio-1171.
 {¶ 73} Thorpe testified that he saw Mysliwczyk fighting with two men he did not recognize at the other end of the bar from where he was sitting. He then told the jury that Mitzo approached the men and tried to break up the fight. Thorpe then testified that as he and Juliano began moving in the direction of the altercation, he saw Mitzo "go down." Shortly after this, however, Thorpe himself was knocked to the ground. By the time Thorpe regained his feet, Mitzo was standing beside Mysliwczyk "[p]retty well battered up." When appellant's attorney asked Thorpe if he saw someone strike Mitzo, the following exchange took place:
 {¶ 74} "Q. Did you ever see [Mitzo] get punched in the face?
 {¶ 75} "A. I can't recall, no.
 {¶ 76} "Q. Did you ever see [Mitzo] kicked in the face?
 {¶ 77} "A. Nope."
 {¶ 78} While Thorpe testified that he did not see Mitzo get kicked in the face, he also told the jury that he could not recall whether Mitzo was punched. Accordingly, based on Thorpe's testimony, appellant's attorney arguably could have used Evid.R. 803(5) to present Thorpe's prior statement to the jury.
 {¶ 79} That being said, the failure to utilize Evid.R. 803(5) to present the jury with the contents of the statement was not prejudicial to appellant's case. Appellant claims that Thorpe's statement implicated Petrus in Mitzo's assault. Unfortunately, a copy of the statement was not preserved in the record for purposes of appellate review. However, during a side bar conference, appellant's attorney told the trial court that "[t]he statement says, `[t]he attacker hit my friend's girlfriend and my friend.'"
 {¶ 80} Without something more to bolster appellant's speculation, there is no way to infer that the "attacker" referred to in Thorpe's statement is Petrus. For all this court knows, Thorpe was actually talking about appellant when he told the police that he saw someone hit Mitzo and Mysliwczyk. Thus, because appellant did not preserve a copy of the statement for appellate review, and there is nothing in the record definitively connecting Petrus to the "attacker," we cannot say that appellant was prejudiced by his attorney's failure to present the statement to the jury.
 {¶ 81} Finally, appellant argues that his attorney should have asked the trial court to declare Thorpe a hostile witness so that he could have cross-examined Thorpe on his prior inconsistent statement. Evid.R. 607 permits a party to challenge the credibility of his own witness through impeachment with a prior inconsistent statement only if the party can show that he was surprised and damaged by his witness' testimony. Here, appellant was obviously surprised that Thorpe testified that he did not see anyone strike Mitzo in the face, considering that shortly after the incident Thorpe gave a statement to police in which he claimed that he did see an unnamed person hit both Mitzo and Mysliwczyk. Moreover, one could argue that Thorpe's testimony damaged appellant's case in that the jury may have been confused as to why appellant called Thorpe to testify on his behalf when Thorpe's testimony did not benefit appellant's case. See, generally, State v. Stearns (1982), 7 Ohio App.3d 11,14-15.
 {¶ 82} Nevertheless, even if appellant's attorney was deficient in failing to have Thorpe declared a hostile witness, we conclude that the failure to do so was not prejudicial in this case. As we noted above, appellant presented no evidence linking the "attacker" in Thorpe's prior statement to Petrus; thus, appellant has not shown how his defense was prejudiced through his attorney's performance.
 {¶ 83} Next, appellant submits that his attorney was ineffective for failing to introduce evidence that he cooperated in the police investigation. He believes that if the jury had this information, the prosecutor's comments in closing arguments concerning appellant's departure from the scene would have been negated.
 {¶ 84} When discussing whether the trial court should instruct the jury on flight, appellant's attorney, on the record in chambers, told the trial court that appellant, upon the request of the authorities, spoke to the police the day after the fight. However, because this was not a proffer, there is nothing in the record to indicate precisely what the evidence would have been, outside this conversation, except that appellant had spoken to the police. This court has consistently held that when a defendant makes a claim of ineffective assistance of counsel based upon facts outside the record, the appropriate remedy is a postconviction relief petition. State v. Songer (Dec. 10, 1999), 11th Dist. No. 98-T-0100, 1999 Ohio App. LEXIS 5939, at 17. That is, a petition for post conviction relief is the only mechanism whereby a defendant can present evidence outside the original trial record. State v. Robinson (Aug. 4, 2000), 11th Dist. No. 98-L-164, 2000 Ohio App. LEXIS 3538, at 5. Accordingly, we conclude that it is impossible at this time for this court to determine whether or not appellant was prejudiced by his attorney's failure to present evidence that he cooperated with the police.
 {¶ 85} Appellant also argues that his attorney was ineffective for failing to object to inappropriate comments made by the prosecutor during closing arguments. This court has already determined that the remarks appellant complains about did not amount to prosecutorial misconduct. As a result, even if his attorney were ineffective for failing to object to them, there was no prejudice.
 {¶ 86} Finally appellant argues that his attorney should have asked the trial court to instruct the jury on self defense or defense of another. Despite "vehemently [denying] any involvement in the fight," appellant maintains that such an instruction "could have swayed some jurors who felt that [he] may have had something to do with the fight, but was justified in his actions."
 {¶ 87} Generally speaking, a "criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence." State v. Sneed (1992), 63 Ohio St.3d 3,9. To establish self-defense, the defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. Similarly, when claiming defense of another as an affirmative defense, the defendant who intervenes to help a stranger stands in the shoes of the person whom he is aiding, and if the person aided is the one at fault, then the defendant is not justified in his use of force and is guilty of an assault. State v. Wenger (1979),58 Ohio St.2d 336, 340.
 {¶ 88} Here, although appellant certainly would have been permitted to set forth inconsistent defenses, he was not entitled to a jury instruction on either self defense or defense of another. There was no claim or evidence that appellant was ever in imminent danger of bodily harm or that he was afraid for his safety. Appellant denied ever hitting or kicking anyone and, in fact, testified that he grabbed Petrus off Mysliwczyk. Furthermore, there is no evidence that Petrus was anything but the aggressor, or that he was justified in striking Mysliwczyk.[3]
Thus, there was no evidence that would have allowed appellant to claim the defense of another. Accordingly, his attorney was not ineffective for failing to request either instruction. Appellant's third assignment of error is without merit.
 {¶ 89} In assignment of error four, appellant contends that the trial court erred when it failed to inform the jury why it had dismissed the intimidation of a witness in a criminal case charge. Appellant argues that without an explanation, the jury may have speculated about the trial court's reasoning and ultimately "cause[ed] confusion within the jury deliberation process."
 {¶ 90} Appellant directs this court to no authority suggesting that a trial court must explain its reasons for dismissing a charge upon a defendant's motion for acquittal. Furthermore, we see no reason to require a trial court to provide an explanation to a jury on such matters. Simply telling the jury that it will no longer consider the charge is sufficient to prevent any undue prejudice as a jury should refrain from speculating about any of a trial court's rulings. Appellant's fourth assignment of error is not well-taken.
 {¶ 91} Based on the foregoing analysis, appellant's four assignments of error have no merit. The judgment of the trial court, therefore, is affirmed.
ROBERT A. NADER, J., concurs.
WILLIAM M. O'NEILL, P.J., concurs in judgment only.
[1] Neither Juliano nor Pekarcik knew appellant or Petrus before the fight.
[2] Greg Trumpour did not testify at trial.
[3] Petrus did not testify at appellant's trial.