The STATE of Ohio, Appellee,

v.

READY, Appellant.

[Cite as *State v. Ready* (2001), 143 Ohio App.3d 748.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2000–L–027.

Decided June 4, 2001.

750

*Charles E. Coulson,* Lake County Prosecuting Attorney, *Brian L. Summers* and *Amy E. Cheatham,* Assistant Prosecuting Attorneys, for appellee.

*R. Paul LaPlante,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, for appellant.

CHRISTLEY, Judge.

This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Sharon Ready, appeals from her conviction entered after a jury found her guilty of receiving stolen property. For the reasons that follow, we affirm the judgment of the trial court.

On June 11, 1999, appellant was secretly indicted by the Lake County Grand Jury on one count of receiving stolen property in violation of R.C. 2913.51. Appellant waived her right to be present at the arraignment, and the trial court entered a plea of not guilty on her behalf.

Appellant subsequently filed a motion to suppress a statement made to authorities on the grounds that she had been questioned without first being given her *Miranda* warnings. The trial court conducted a hearing, and in an abbreviated judgment entry dated September 8, 1999, denied appellant's motion.

The case proceeded to a jury trial on November 29, 1999. After hearing all of the evidence, the jury returned a verdict of guilty. The trial court then referred appellant to the probation department for a presentence investigation report, and on January 19, 2000, sentenced appellant to one hundred twenty days in the Lake County Jail, with twenty days conditionally suspended, and two years of community control.

From this judgment, appellant filed a timely notice of appeal with this court. She now asserts the following assignments of error for our review:

"[1.] The trial court erred to the prejudice of the defendant-appellant by failing to exclude evidence which was not essential to the state's case and which created unfair prejudice and misled the jury, in violation of the defendant-appellant's constitutional rights to [a] fair trial and due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

"[2.] The trial court erred to the prejudice of the defendant-appellant when it overruled her motion to suppress challenging the lawfulness of her statement to police, in violation of her constitutional rights to due process and against self-incrimination as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

"[3.] The trial court erred to the prejudice of the defendant-appellant when it denied her motion for acquittal made pursuant to Crim.R. 29.

"[4.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

In her first assignment of error, appellant argues that the trial court abused its discretion by allowing the state to present detailed information concerning the credit fraud and theft ring in which appellant's son, John Ready ("Ready"), and Joe Padley ("Padley") were involved. Appellant maintains that this evidence should not have been allowed, because there was nothing to indicate that she was aware of the criminal activities, and because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and of misleading the jury.

At trial, Detective Robert Eden of the city of Eastlake Police Department testified that he was in charge of investigating a credit fraud and theft ring allegedly coordinated by Ready and Padley.[1] Specifically, he provided testimony on the following issues: (1) how the investigation began; (2) how the two men obtained false identifications, which they used to receive credit at various stores; (3) how the false identifications were created; (4) the names of stores where merchandise was "bought" with the fraudulently acquired credit; (5) how the search warrants were obtained and executed; (6) what items were recovered; and (7) how the two men were finally arrested. Furthermore, the state also introduced into evidence the actual warrants that were used to search Ready and

---

1. At the time of appellant's trial, both Ready and Padley had been charged with numerous crimes arising from their activities. However, both men had left the state and were fugitives from justice.

Padley's home, which listed the merchandise that had been taken from the stores, and included an affidavit explaining how the plan was allegedly implemented by the two men.

Appellant's attorney objected to this evidence on the grounds that the state could not show that appellant had any knowledge of these acts. Following a sidebar conference, the trial court overruled the objection and allowed the testimony and the admission of the search warrants as exhibits. Appellant continued to object to other similarly related evidence.

In Ohio, it is well settled that the determination as to the admissibility of relevant evidence falls within the province of the trial court. *State v. Simon* (May 26, 2000), Lake App. No. 98–L–134, unreported, at 5, 2000 WL 688728. As a result, evidentiary rulings on these matters are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Id.*

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Accordingly, "the question of whether evidence is relevant is ordinarily not one of law but rather one which the trial court can resolve based on common experience and logic." *State v. Lyles* (1989), 42 Ohio St.3d 98, 99, 537 N.E.2d 221, 222. See, also, *Simon* at 5.

After reviewing the record in the case at bar, we believe that some limitation probably could have been imposed on the prosecution with respect to this matter. Unfortunately, appellant's objections were aimed at any and all evidence of the plan. Thus, the trial court was faced with the prospect of picking and sorting through the particular objections without knowing that a specific link to appellant would never be established. While we acknowledge that the defense is not always able to predict the game plan of the prosecution prior to trial, in this instance it would have been more productive to attempt to set boundaries prior to trial with a motion *in limine*.

In any event, appellant argues that all evidence of the plan was irrelevant because the state was not required to prove the underlying theft offense to convict her of receiving stolen property. Although we agree with the foregoing statement, the state did have to show that this specific television was stolen. Accordingly, certain activities of the two men were relevant to show how the television was initially acquired. However, the establishment of a complete modus operandi for Ready and Padley was irrelevant because it failed to link the scheme in some meaningful fashion to appellant.

■ Appellant further argues that even if the evidence were relevant, the trial court should have nonetheless excluded it under Evid.R. 403(A) because any probative value of the evidence was substantially outweighed by the danger of unfair prejudice and of misleading the jury. We disagree.

Admittedly, the only connection ever made was that Ready was appellant's son and that the television had been stolen by Ready and Padley. Nevertheless, in retrospect, it is difficult to conclude whether the overall impact may have actually been beneficial to appellant rather than prejudicial. Because there was so little to tie appellant to the actions of Ready and Padley, the jury could well have concluded that appellant was clearly *unaware* of the scam that was being perpetrated by her son and his roommate prior to her receipt of the television.

In fact, at no time did the state allege that appellant was somehow involved with the theft scheme. Instead, the state argued that based on facts of the case, appellant should have been on notice that the television was stolen, if not at the time she first received it, then, in the intervening months after, she certainly became aware of her son's and Padley's criminal activity.

■ Furthermore, "with regard to the risk of prejudice, it must be shown that the prejudicial effect was unfair because it might have provided the jury with an improper basis for rendering its decision." *Simon* at 7. Here, there is little before this court which suggests that the admission of the disputed evidence provided the jury with an improper basis upon which it returned its guilty verdict against appellant. As previously discussed, there was even a positive aspect in the sense that there was no visible link between the nefarious scheme and appellant prior to the acquisition of the television.

Accordingly, the probative value of the evidence concerning the television's acquisition was not outweighed by the danger of unfair prejudice or of misleading the jury, let alone substantially outweighed as required by Evid.R. 403(A). As a result, although we conclude that most of the evidence in this regard to be irrelevant, we fail to find a sufficient degree of unfair prejudice. Therefore, the trial court did not abuse its discretion by admitting the evidence relating to the credit fraud and theft scheme. Appellant's first assignment of error has no merit.

Under her second assignment of error, appellant claims that the trial court erred in refusing to suppress a statement she made during a police interview on February 8, 1999, because police did not advise her of her *Miranda* rights. She believes that because Detective Eden suspected her of receiving the stolen television, he should have known that asking her to give a written statement

while at the police station would likely elicit an incriminating response.[2]

At a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982. See, also, *State v. Gray* (July 14, 2000), Geauga App. No. 99–G–2249, unreported, at 4, 2000 WL 973411; *State v. Hrubik* (June 30, 2000), Ashtabula App. No. 99–A–0024, unreported, at 4, 2000 WL 898820; *State v. Robinson* (June 30, 2000), Portage App. No. 99–P–0019, unreported, at 4, 2000 WL 895587.

On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498, 502–503; *Gray* at 4–5; *Hrubik* at 5; *Robinson* at 4. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether the applicable legal standard has been met. *Retherford* at 592, 639 N.E.2d at 502–503; *Gray* at 5; *Hrubik* at 5; *Robinson* at 4–5.

It is generally accepted that "a police officer must inform a suspect in custody that [she] has the right to remain silent, that [her] statements may be used against [her] in a court of law, that [she] has the right to an attorney, and that if [she] cannot afford an attorney, one will be appointed prior to questioning." *State v. Taylor* (Mar. 23, 2001), Portage App. No. 99–P–0071, unreported, at 7, 2001 WL 285872. If the state cannot prove that the suspect was cognizant of the above procedural safeguards, any inculpatory or exculpatory statement made by the suspect as a result of a custodial interrogation may not be used against the suspect at a subsequent criminal trial. *State v. Hayes* (Sept. 30, 1999), Ashtabula App. No. 97–A–0067, unreported, at 32–33, 1999 WL 959831

"Police are not required to administer *Miranda* warnings to everyone whom they question." *State v. Biros* (1997), 78 Ohio St.3d 426, 440, 678 N.E.2d 891, 904–905. Instead, under the United States Supreme Court's decision in *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, two separate factors must be present before police are required to give *Miranda* warnings to a suspect: (1) custody and (2) interrogation. *Hayes* at 33.

In *Miranda*, the Supreme Court described custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant

---

**2.** In her statement, appellant essentially claimed that she had purchased the television from Padley for $150.

way." *Miranda* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. See, also, *State v. Tucker* (1998), 81 Ohio St.3d 431, 436, 692 N.E.2d 171, 175–176. Since then, the court has refined this definition. Now, "[c]ustody encompasses a formal arrest or restraint of movement of the degree associated with a formal arrest." *Hayes* at 34. More important for this case, in a nonarrest situation, "the restraint on the suspect's freedom of movement must be significant * * * in order to constitute custody for purposes of *Miranda.*" *Hayes* at 34.

▮ In addition, "[t]he fact that a suspect is being interviewed at a police station does not, *per se*, require a *Miranda* rights warning." *State v. Mason* (1998), 82 Ohio St.3d 144, 154, 694 N.E.2d 932, 946. Rather, the determination of whether a custodial interrogation has occurred requires an inquiry into how a reasonable person in the detainee's position would have felt in the same position. *Id.* See, also, *State v. Martin* (Dec. 29, 2000), Ashtabula App. No. 99–A–0018, unreported, at 9–10, 2001 WL 20715. The burden of proving that *Miranda* was complied with in a given case is on the prosecution. *Taylor* at 7.

After appellant filed her motion to suppress, the trial court conducted a hearing where Detective Eden testified about the events surrounding appellant's oral and written statement, as well as to the details of the statement itself. He related that several months after Ready and Padley had been arrested on November 10, 1998, he received a phone call from one Bradley Bledsoe on February 3, 1999, concerning the fraudulent purchases.[3] During this conversation, Bledsoe told Detective Eden that the suspects had paged him on November 6, 1998, and asked him to bring his truck to the Circuit City department store in Mentor so that he could help them transport several items just purchased at the store. Once the merchandise was loaded in the truck, Ready told Bledsoe to drive to appellant's apartment. Bledsoe informed the detective that when they arrived at the apartment, Ready and Padley carried a television, still in the box, up to appellant's apartment.

Based on this conversation, Detective Eden obtained a search warrant for appellant's apartment, which was executed on February 5, 1999. Appellant was not home at the time, so the officers took the television and, according to Detective Eden, left her a copy of the warrant along with a copy of the inventory from Circuit City.

Detective Eden stated that appellant called him on February 8, 1999, concerning the taking of the television. He testified that he never asked appellant to come to the police station, but that she told him that she would come down later

---

**3.** No evidence was offered regarding why Bledsoe decided to make this call.

that evening to answer a few questions about how the television came into her possession.

When she arrived at the police station, appellant was taken to a small room for questioning. There, appellant informed Detective Eden that she had purchased the television from Padley for $150. Furthermore, she also told him that Padley had helped her move the television into her apartment, and that Ready was not there at the time.

The two then discussed Ready's involvement in the previous fraudulent credit purchases. According to Detective Eden's testimony, appellant informed him that while she did not think Ready was involved, there was no way her son could not have known what Padley was doing because the two men were roommates. At the end of their conversation, Detective Eden asked appellant to fill out a written statement reiterating what she had just told him.[4]

In total, appellant was at the police station for approximately thirty minutes. It was uncontested that appellant was never advised of her *Miranda* rights at this time. Detective Eden testified, however, that appellant was never told that she could not leave, nor was she ever placed under arrest, booked, photographed, or fingerprinted.[5]

Appellant now argues that she was subjected to custodial interrogation because a reasonable person in her situation would have considered herself to be "in custody." To support this argument, appellant maintains that a custodial interrogation occurred because (1) Detective Eden viewed her as a suspect, and (2) she was taken to a police interview room, where she was questioned for thirty minutes about the television.

The uncontradicted evidence introduced during the suppression hearing shows that appellant contacted Detective Eden on her own and came to the police station voluntarily in her vehicle. In addition, the evidence also revealed that appellant was never placed under arrest or otherwise subjected to any restraint on her freedom of movement. Moreover, there was no indication that appellant was forced or compelled to respond to Detective Eden's questioning. Simply stated, there was absolutely no evidence demonstrating that appellant was under arrest, that she thought she was under arrest, that appellant was a suspect at that point, or that police imposed any restraint on her freedom of movement.

As a result, because appellant was not in "custody," the police did not violate her *Miranda* rights. *Mason* at 154, 694 N.E.2d at 946–947. Thus, the trial court

4. This statement was introduced at the suppression hearing.

5. Detective Eden's account was uncontroverted because appellant did not testify at the suppression hearing.

did not abuse its discretion in denying her motion to suppress. Appellant's second assignment of error is not well taken.

In assignment of error three, appellant argues that the trial court erred by denying her Crim.R. 29 motion for acquittal because the state failed to prove beyond a reasonable doubt that she knew, or had reasonable cause to believe, that the television was stolen. Likewise, in her fourth assignment of error, appellant maintains that the jury's verdict was against the manifest weight of the evidence because the evidence presented at trial established that she did not know, or have reasonable cause to believe, that the television she received as a gift from her son was stolen. These assignments contain related issues and, therefore, will be considered in a consolidated manner.

Under Crim.R. 29, the trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. Accordingly, a motion for judgment of acquittal under Crim.R. 29 should be granted only where the evidence is insufficient to sustain a conviction. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399–400. Thus, an appellate court must apply the same standard in reviewing a denial of a motion for acquittal as if it were reviewing a challenge to the sufficiency of the evidence.

When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. See, also, *State v. Schlee* (Dec. 23, 1994), Lake App. No. 93–L–082, unreported, at 16, 1994 WL 738452.

On the other hand, when reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720–721. See, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547; *State v. Duong* (Dec. 11,

1998), Trumbull App. No. 98–T–0026, unreported, at 4, 1998 WL 964315; *Schlee* at 14–15.

"The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 20 OBR at 218–219, 485 N.E.2d at 720–721. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. *Thompkins* at 390, 678 N.E.2d at 548–549 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph two of the syllabus.

To convict a person of receiving stolen property, the state is required to prove that the suspect received, retained, or disposed of property of another knowing or having reasonable cause to believe that the property had been obtained through commission of a theft offense. R.C. 2913.51.

Here, appellant does not dispute that she had possession of a television that had been purchased with fraudulently obtained credit. Rather, she argues that she did not have knowledge or reasonable cause to believe that her son had given her a stolen television on November 6, 1998.

In particular, appellant claims that the television was given to her by Ready as a birthday gift, and that there was nothing suspicious about this because there had been discussions about her getting a new television. Furthermore, although appellant questioned Ready about the television after he and Padley were arrested on November 10, 1998, she claims that her son reassured her that he had purchased the television at a going-out-of-business sale.

The jury could have believed this aspect of appellant's testimony and still convicted her. The crime of receiving stolen property does not require that a suspect, immediately upon receipt, recognize the property as stolen. Rather, it is sufficient that at *some* point after receipt, the recognition occur.[6]

A review of the pertinent dates before the jury becomes relevant in determining if there were a point in time when appellant ought to have known of the stolen nature of the television. The record shows that on November 6, 1998,

---

6. A person is guilty of receiving stolen property if she receives, *retains,* or disposes of property of another knowing or having reasonable cause to believe that the property had been obtained through commission of a theft offense. R.C. 2913.51. Thus, even if the suspect was unaware that the property was stolen at the time of receipt, the suspect would still be guilty if, after learning the true nature of the property, he or she *retains* it.

Ready and Padley delivered the television to appellant's apartment. After they were arrested, the police searched their apartment on November 27, 1998, and recovered all of the stolen items except the television in question. Appellant learned of this search and seizure and called the police about the return of Christmas presents that she felt had been mistakenly taken along with the other items.

Several months later, the police received information from Bledsoe about his role in delivering the television to appellant's apartment. As a result, the police obtained a search warrant on February 5, 1999, for appellant's apartment and recovered the television with its serial number missing. Appellant called Detective Eden and went to the station to make her now-disputed statements. Afterwards, Bledsoe's account of the delivery was reconfirmed by the detective, and appellant was subsequently arrested.

When looking at the evidential table, a critical fact appears to be appellant's earlier untruthful statement to Detective Eden in which she claimed that Padley had sold her the television. The detrimental effect of this statement is compounded by the fact that she never mentioned to authorities until trial that the television was a birthday gift from her son.[7]

In addition, appellant's explanation lacked credibility with respect to how the serial number could have been removed if she received the television while it was still in the box. See *State v. Bezak* (Feb. 18, 1998), Summit App. No. 18533, unreported, at 4, 1998 WL 103336 (holding that apparent removal of the serial number from a brand new chain saw could reasonably cause someone to believe that the saw was stolen). Therefore, there were numerous and significant inconsistencies between appellant's trial testimony and the statement given to police.

After considering the evidence before us, and giving all due difference to the jury's assessments of credibility, we conclude that there was substantial evidence upon which the trier of fact could reasonably conclude that appellant, at some point, reasonably should have known that the television was stolen. As a result, appellant's third assignment of error has no merit.

As for appellant's argument that the jury's verdict was against the manifest weight of the evidence, after reviewing the entire record and weighing the evidence presented along with all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's conviction

---

7. This portion of appellant's testimony was supported by the testimony of another son who was not involved in the criminal acts. However, like appellant, he also did not come forward with this information until trial.

762

for receiving stolen property. The weight of much of the testimony presented rested on the credibility of the witnesses. However, the credibility of each witness was a critical issue for the jury to decide, and this court will not disturb those findings on appeal. Therefore, appellant's fourth assignment of error is also without merit.

Based on the foregoing analysis, appellant's four assignments of error are not well taken. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and NADER, J., concur.