OPINION
{¶ 1} This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Jennifer Sobczak, appeals from her conviction on one count of aggravated menacing. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The record shows that Deputy Chris Sattler ("Deputy Sattler") of the Portage County Sheriff's Department arrested appellant during the early morning hours of December 29, 2001, and charged her with one count of aggravated menacing, in violation of R.C. 2903.21. Appellant entered a plea of not guilty, and the matter proceeded to a bench trial in the Ravenna Division of the Portage County Municipal Court on February 13, 2002.
 {¶ 3} During appellant's trial, the following evidence was presented. On the evening of December 28, 2001, Patrolman Matt Myers ("Patrolman Myers"), of the Mantua Police Department, was on routine patrol with Patrolman James Clemens ("Patrolman Clemens") when the two men observed appellant standing on a basketball court in Buchert Park at around 10:45 p.m. Approximately forty minutes later, the officers initiated a traffic stop on State Route 44 just outside Mantua. While Patrolman Clemens was writing the citation, Patrolman Myers exited the police cruiser, which was parked on the berm of the road, and walked to the rear of the vehicle to confer with Patrolman Rodney Terry ("Patrolman Terry"), who had stopped to offer assistance.
 {¶ 4} After informing Patrolman Terry that the situation was under control, Patrolman Myers began walking back to his car. However, when he was between his cruiser and that of Patrolman Terry's, both of which had their emergency lights activated, Patrolman Myers heard a vehicle approaching behind him at a high rate of speed. When Patrolman Myers turned around, he observed a burgundy Chevrolet Corsica driven by appellant with the license plate PG 1005 swerve in his direction, coming within "inches" of hitting him. In addition, both Patrolman Clemens and Patrolman Terry testified that, although they did not see who was driving the car, they observed a burgundy Chevrolet Corsica traveling at a high rate of speed, between seventy to seventy-five m.p.h., as it passed close to the stopped vehicles and Patrolman Myers.
 {¶ 5} Because Patrolman Myers and Patrolman Terry were familiar with appellant from prior experiences, they contacted the Portage County Sheriff's Department to have her arrested. Deputy Sattler, who also knew appellant, went to appellant's home during the early morning of December 29, 2001, to question her about the incident. He ultimately placed appellant under arrest and transported her to the Portage County Sheriff's Department.
 {¶ 6} In her defense, appellant presented the testimony of Deborah Rose Sobczak ("Mrs. Sobczak"), her mother. Mrs. Sobczak testified that on the night in question, appellant returned home at around 10:40 p.m., and that at the time the state claimed she committed the offense, appellant was on the telephone. Appellant, however, did not submit any corroborating evidence to support Mrs. Sobczak's testimony.
 {¶ 7} After considering the testimony, the trial court found appellant guilty of aggravated menacing. The court then sentenced appellant to serve 180 days in jail, which was to be served consecutively to a sentence from a separate and unrelated charge.
 {¶ 8} From this decision, appellant filed a timely notice of appeal with this court. She now argues under her sole assignment of error, that her conviction is against the sufficiency and manifest weight of the evidence as there is no evidence establishing that she knowingly caused Patrolman Myers to believe that she would cause him serious physical harm. For the reasons that follow, we disagree.
 {¶ 9} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average trier of fact of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 10} On the other hand, when reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 11} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 12} To convict appellant of aggravated menacing, the state was required to prove that appellant knowingly caused Patrolman Myers to believe that she would cause him serious physical harm. R.C. 2903.21. However, "[t]he threat need not actually be verbalized; it can be implied by the offender's actions. (Emphasis added.) Niles v. Holloway (Oct. 3, 1997), 11th Dist. No. 96-T-5533, 1997 WL 665974, at 2. "The key is whether the victim genuinely believes that he or she is facing serious physical harm to person or property." Id.
 {¶ 13} After considering the record, this court concludes that, when viewed in a light most favorable to the state, there was substantial evidence upon which the trier of fact could reasonably conclude that appellant knowingly caused Patrolman Myers to believe that she would cause him serious physical harm. Patrolman Myers testified that when he turned around after hearing a fast approaching vehicle, he saw appellant swerve her car in his direction, coming within "inches" of striking him:
 {¶ 14} "Q. [by the prosecutor] O.K. Now, you said something alerted you that something was coming down the road. What — can you describe that?
 {¶ 15} "A. [Patrolman Myers] *** I turned around and, like I said, I looked in the windshield and saw [appellant], and could noticeably see the car swerve in at the patrol cars, and I looked in the — looked right in the windshield when she drove by and I looked right at her. And as it went by I looked at the license plate PG 1005, and the burgundy colored Corsica.
 {¶ 16} "***
 {¶ 17} "Q. Now, at the moment she took — now, is it your testimony that she did come in — she did take action towards you?
 {¶ 18} "A. Yes, sir.
 {¶ 19} "Q. And you're certain of that?
 {¶ 20} "A. Yes, sir."
 {¶ 21} Appellant, however, argues that there is no evidence that she acted knowingly because the witnesses could only speculate as to her motives. "A person acts knowingly, regardless of [her] purpose, when [she] is aware that [her] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when [she] is aware that such circumstances probably exist." R.C. 2901.22(B)
 {¶ 22} The state presented evidence that in the late evening hours of December 28, 2001, a driver on a two-lane highway was operating her vehicle at speeds estimated between seventy and seventy-five miles per hour, despite the presence of two sets of flashing emergency lights illuminating three vehicles parked along the berm of the road. The testimony also showed that the driver then swerved her vehicle in the direction of a police officer walking on the side of the road, and that the officer clearly saw the driver as the vehicle only missed him by inches. Further, the same police officer testified that based on what he observed, he believed the act was intentional. There was no evidence or suggestion that the driver was impaired.
 {¶ 23} Under those facts, a trier of fact could reasonably conclude that the patrolman believed that the driver would cause him serious harm. Similarly, a trier of fact could reasonably conclude that a driver who acted in the manner described should have been aware that her conduct would cause the other person to fear serious physical harm. See,generally, State v. Luckey (Sept. 2, 1998), 3d Dist. No. 2-98-14, 1998 WL 568358, at 2 (holding that "[w]hile merely appearing for work early and sitting in [an] idling vehicle may not constitute an act of aggravated menacing, [the defendant's] subsequent conduct of accelerating his vehicle towards [the victim] certainly would allow a rational trier of fact to conclude beyond a reasonable doubt that [the defendant] committed an act of aggravated menacing.").
 {¶ 24} As for appellant's argument that the trial court's judgment was against the manifest weight of the evidence, after reviewing the entire record and weighing the evidence presented along with all reasonable inferences, and considering the credibility of the witnesses, we conclude that the trial court did not lose its way or create a manifest miscarriage of justice in connection with appellant's conviction. Appellant maintains that under the circumstances, i.e., the incident occurred at night and the suspect vehicle was traveling at a high rate of speed, the trial court should have given less weight to the testimony of the police officers. In fact she goes so far as to suggest that "it defies imagination that even a trained officer can notice a vehicle in the dark, the inference being that only the headlights were visible, and in a split second identify a precise rate of speed, *** [and] within that split second, form a belief that harm is about to befall, and read a license plate."
 {¶ 25} Although appellant's mother testified that appellant was home at the time the state claimed she committed the offense, Patrolmen Myers identified appellant as the person driving the burgundy Chevrolet Corsica. Further, there was evidence that the scene was illuminated by at least two sets of emergency lights. More critical to the identification was the fact that appellant was the owner of a car identical to the one described, including the license plate.
 {¶ 26} Despite the fact that much of the weight of the testimony presented rested on the credibility of the witnesses, there is nothing to suggest that the witnesses' testimony was incredible, absurd, or unworthy of belief. Accordingly, this court will not disturb those findings on appeal as the credibility of each witness was a critical issue for the trier of fact to determine. State v. Ready (2001), 143 Ohio App.3d 748.
 {¶ 27} Based on the foregoing analysis, appellant's sole assignment of error is without merit. The judgment of the trial court is affirmed.
DONALD R. FORD and DIANE V. GRENDELL, JJ., concur.