[Cite as *State v. Diggs*, 2014-Ohio-3340.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                         :

        Plaintiff-Appellee,                  :                    No. 14AP-18
                                          (C.P.C. No. 13CR-4963)

v.                                                    :

                                             (REGULAR CALENDAR)

Fred Diggs, IV,                                       :

        Defendant-Appellant.                 :

---

D E C I S I O N

Rendered on July 31, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Megan Jewett*, for appellee.

*Wolfe Van Wey & Associates, LLC,* and *Stephen T. Wolfe*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Fred Diggs, IV, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of aggravated burglary, one count of aggravated robbery, two counts of robbery, all with firearm specifications, and one count of failure to comply with an order or signal of a police officer. Because the sufficiency of the evidence and the manifest weight of the evidence support appellant's convictions and the trial court did not err in overruling appellant's Crim.R. 29 motion for acquittal, we affirm.

## I. Facts and Procedural History

{¶ 2} Through an indictment filed September 18, 2013, the state charged appellant with (1) one count of aggravated burglary, a felony of the first degree, in

violation of R.C. 2911.11, (2) one count of kidnapping, a felony of the first degree, in violation of R.C. 2905.01, (3) one count of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01, (4) one count of robbery, a felony of the second degree, in violation of R.C. 2911.02, (5) one count of robbery, a felony of the third degree, in violation of R.C. 2911.02, and (6) one count of failure to comply with an order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331. Counts 1 through 5 all included accompanying firearm specifications. Additionally, the first five counts were indicted under a complicity theory along with two co-defendants. The indicted offenses all related to the events of April 29, 2013 involving a home invasion robbery and the subsequent high-speed car chase. Appellant entered a plea of not guilty to all six counts.

{¶ 3} At a jury trial commencing October 7, 2013, the victim, Markesha Gravely, testified that on the day of April 29, 2013, she was home with her two young children when a man forced his way into her home and demanded she give him money at gunpoint. The man told her "your husband, GY, is the one who sent me." (Tr. Vol. I, 72.) Markesha gave the man two water jugs being used as her children's piggy banks, and the man also demanded her cell phone. Before exiting her home, Markesha testified the man said "I should kill your daughter," and he fired his revolver into the floor near where Markesha's three-year-old daughter was standing. (Tr. Vol. I, 75.) Markesha immediately dialed 911 from her house phone and attempted to chase the man down the street. The state played a recording of Markesha's 911 call in court during which Markesha gave a description of the man to the 911 operator. When she hung up with the 911 operator, Markesha called her husband and described what had just happened and told her husband where the man was running. After the police informed Markesha they had made an arrest that day, Markesha identified the man who forced his way into her home and robbed her at gunpoint as Josias Smith.

{¶ 4} Markesha's husband, Demetris Gravely, also testified. Demetris stated he had spent time in prison and, during that time, he earned the nickname "Graveyard," which was eventually shortened to "GY." (Tr. Vol. I, 109.) Demetris testified that on the day of April 29, 2013, he was driving back to his house when his wife called him to tell him they had just been robbed and that the man who held her at gunpoint was running away

toward Tamarack Boulevard. Markesha gave Demetris a description of the man, and Demetris stated he started driving in that direction "looking for anybody with a gray shirt or a gray hoodie." (Tr. Vol. I, 112.) He eventually spotted a man who matched the description and saw him toss a bag into a waiting vehicle and then jump in through the rear driver's side door of the vehicle before it sped off. Demetris testified the car took off instantly after the man jumped in without any delay, as though the vehicle "was waiting for him." (Tr. Vol. I, 116.) Demetris followed the vehicle and called 911 for assistance in his pursuit. The vehicle was traveling faster than the posted speed limits and was running through red lights, and Demetris continued to follow it until police arrived.

{¶ 5} After police pursued and arrested the three occupants of the vehicle, Demetris identified appellant as the driver of the vehicle. Demetris also identified the man he saw running and who jumped into the waiting vehicle as Smith. Though Demetris stated he had never seen Smith prior to the day of the robbery, he testified he knew relatives of appellant and that those relatives knew he went by the nickname "GY."

{¶ 6} Officer Delner Twitty of the Columbus Police Department testified he was on duty on April 29, 2013 when he heard about the vehicle from Demetris' 911 call on his police cruiser radio. There were several cruisers responding to this incident, and Officer Twitty eventually saw the suspect vehicle driving southbound on Ambleside Drive near East Dublin-Granville Road. Officer Twitty turned on his lights and siren and pursued the vehicle. The vehicle did not attempt to stop but instead increased its speed and attempted to evade Officer Twitty's cruiser. The high-speed chase continued until Officer Twitty turned right to attempt to cut off the vehicle's path, and another police cruiser continued in direct pursuit of the vehicle. Officer Twitty received word that the suspects had bailed out of the car and were running away on foot.

{¶ 7} The state then played the police cruiser video recording from the cruiser that stopped directly behind the suspect vehicle when the vehicle stopped and the occupants got out and fled on foot. Officer David Weisgerber testified that after pursuing the suspect vehicle, he saw two individuals running in between houses, so he got out of his cruiser and pursued them on foot. Officer Adam Worthington testified he detained Smith as soon as Smith exited the suspect vehicle. Officer Worthington did not find a firearm on Smith's person or in the vehicle after he was arrested.

{¶ 8}   Officer Allen Troutman testified that after setting up a perimeter to search for the two suspects who had fled on foot, one of the men eventually reemerged between the houses, running and covered in mud.   Officer Troutman arrested the man, and he subsequently identified that man as appellant.   Several hours later, another officer apprehended the third occupant of the vehicle, Jazzjuan Moore.  Police recovered from the suspect vehicle the plastic bottles with money and the cell phone taken from Markesha.  No firearm was ever recovered.

{¶ 9}   Appellant also testified at trial and stated he had no involvement in Smith's criminal activities on April 29, 2013.  While appellant testified he has known Moore for over ten years, he stated he only knew of Smith and did not converse with him often. According to appellant's testimony, on the day of the home invasion, appellant was sitting in his car with Moore rolling marijuana cigarettes when they unexpectedly saw Smith running down the street carrying a gun and a trash bag.  Appellant stated Smith jumped in his car without permission and demanded that appellant drive while threatening him with a gun.  Appellant did not deny that he drove the vehicle with Smith in the car or that he disobeyed signals from the police to pull over; rather, he testified he only did those things because Smith was threatening him with a gun and he feared for his life.

{¶ 10} After deliberations, the jury returned guilty verdicts for the charges of aggravated burglary, aggravated robbery, second-degree felony robbery, third-degree felony robbery, all with the accompanying firearm specification, as well as a guilty verdict for the charge of failure to comply with an order or signal of a police officer.  The jury found appellant not guilty as to the kidnapping charge.  Following a December 13, 2013 sentencing hearing, the trial court sentenced appellant to a total of 21 years in prison.  The trial court journalized appellant's convictions and sentence in a January 6, 2014 amended judgment entry.  Appellant timely appeals.

## II. Assignments of Error

{¶ 11} Appellant assigns three assignments of error for our review:

[1.] The evidence presented at trial was insufficient to support the convictions.

[2.] The trial court erred when it overruled appellant's motion for acquittal pursuant to Criminal Rule 29.

[3.] The jury's verdicts were against the manifest weight of the evidence.

## III. First Assignment of Error – Sufficiency of the Evidence

{¶ 12} In his first assignment of error, appellant argues there was insufficient evidence to convict him of aggravated burglary, aggravated robbery, and the two robbery counts. Appellant does not challenge the sufficiency of the evidence as it relates to Count 5 of the indictment, failure to comply with the order or signal of a police officer.

{¶ 13} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 14} Appellant was indicted as an accomplice of the principal offender, Smith, for the charges of aggravated burglary, aggravated robbery, and the two robbery charges. Appellant does not argue that the state failed to prove the elements of those offenses as to Smith; rather, appellant argues the state failed to prove the elements of appellant's involvement in those offenses under a complicity theory. All of the offenses relate to the same home-invasion robbery of the Gravelys' home on April 29, 2013.

{¶ 15} R.C. 2923.03, Ohio's complicity statute, provides, in pertinent part:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of [R.C. 2923.01];

(4) Cause an innocent or irresponsible person to commit the offense.

\* \* \*

> (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

Appellant asserts there was insufficient evidence that would allow any rational trier of fact to come to the conclusion that appellant aided or abetted Smith in the commission of the offenses.

{¶ 16} "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "An aider or abettor must also 'share[ ] the criminal intent of the principal,' but '[s]uch intent may be inferred from the circumstances surrounding the crime' such as 'presence, companionship and conduct before and after the offense is committed.' " *State v. Kendricks*, 10th Dist. No. 10AP-114, 2010-Ohio-6041, ¶ 16, quoting *Johnson* at syllabus, and *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971).

## A. Aggravated Burglary

{¶ 17} Pursuant to R.C. 2911.11(A)(1) and (2), "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense" if either "[t]he offender inflicts, or attempts or threatens to inflict physical harm on another," or "[t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." The culpable mental state for aggravated burglary is "purposeful." *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 44, citing *State v. Conley*, 4th Dist. No. 08CA784, 2009-Ohio-1848, ¶ 40.

{¶ 18} Markesha testified that Smith pointed his gun at her as he forced his way into her home, and appellant does not dispute that Smith brandished a weapon during the burglary. The sole issue, then, is whether there was sufficient evidence to show appellant purposely aided or abetted Smith in the commission of the aggravated burglary.

{¶ 19} Appellant argues there was little evidence suggesting he had any connection to Smith prior to the burglary, let alone that he aided and abetted Smith in the

commission of the aggravated burglary. However, direct evidence of their relationship prior to the commission of the crimes is not necessary, as " ' "[p]articipation in criminal intent may be inferred from presence, companionship and conduct *before and after* the offense is committed." ' " (Emphasis added.) *State v. Phipps*, 10th Dist. No. 03AP-533, 2004-Ohio-3226, ¶ 14, quoting *Johnson* at 245, quoting *Pruett* at 34. Nonetheless, appellant admitted to knowing Smith, and he testified that both he and Moore, the other co-defendant and the man who was in the car with him that day, lived near the Gravelys. Appellant also admitted to knowing someone who spent time in prison with Demetris Gravely. Further, when Smith ran from the Gravelys' home, he went immediately to the nearby idling vehicle in which appellant was the driver. As the driver, appellant then led police on a high-speed chase to elude capture.

{¶ 20} The only conflicting evidence was appellant's self-serving testimony that it was sheer coincidence that he was sitting in his idling car near the crime scene and that he was forced to drive away at gunpoint, which the jury was free to disbelieve. Appellant also argues it was too great of a leap to make that the only way Smith could have learned Demetris Gravely's prison nickname, GY, was for appellant to have told Smith because there was no direct evidence that appellant conspired with Smith before the home invasion or provided Smith with information about their target. However, "[u]nder Ohio law, * * * circumstantial evidence can have the same probative value as direct evidence, and '[a] conviction can be sustained on circumstantial evidence alone.' " *State v. Fausnaugh*, 10th Dist. No. 11AP-842, 2012-Ohio-4414, ¶ 26, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991).

{¶ 21} We conclude that, when construing the evidence in a light most favorable to the prosecution, appellant's presence very near the crime scene combined with his conduct after the commission of the offenses was sufficient evidence allowing a rational trier of fact to find, beyond a reasonable doubt, that appellant purposely supported and assisted Smith and shared Smith's criminal intent in his effort to forcibly enter the Gravelys' home and deprive Markesha Gravely of her property without her consent when he drove the getaway car after Smith fled from the Gravelys' home.

## B. Aggravated Robbery

{¶ 22} Under R.C. 2911.01(A)(1), aggravated robbery where the offender has a deadly weapon on or about their person while committing a theft offense is a strict liability offense. *Kendricks* at ¶ 17, citing *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, ¶ 32. Further, aggravated robbery under R.C. 2911.01(A)(3), where an offender inflicts or attempts to inflict serious physical harm on another while committing a theft offense, is also a strict liability offense. *Id.*, citing *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, ¶ 53. As to the theft aspect of the offense of aggravated robbery, the culpable mental state is "knowingly." *Id.*, citing *Horner* at ¶ 49. A person acts knowingly when he is "aware that his conduct will probably cause a certain result or will probably be of a certain nature," while a person "has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 23} Markesha testified that Smith, the principal offender, brandished a weapon during the robbery and that he discharged that weapon into the floor. Appellant does not dispute that Smith brandished a weapon during the theft offense. Similar to his argument as to the aggravated burglary charge, appellant argues there was insufficient evidence to permit a finding that he knowingly aided and abetted Smith in the commission of the aggravated robbery.

{¶ 24} "When knowledge suffices to establish an element of an offense, then purpose is also sufficient culpability." R.C. 2901.22(E). Thus, where there is sufficient evidence to conclude that a defendant acted purposely, there is also sufficient evidence to establish that he acted knowingly. *State v. Overton*, 10th Dist. No. 09AP-858, 2011-Ohio-4204, ¶ 9, citing R.C. 2901.22(E). As we have already determined the evidence was sufficient to allow a rational trier of fact to find appellant acted purposefully in aiding and abetting the aggravated burglary, it follows that the evidence is also sufficient to find appellant acted knowingly in aiding and abetting the aggravated robbery as both offenses stem from the common scheme of the home-invasion robbery.

## C. Robbery

{¶ 25} R.C. 2911.02 (A)(1) to (3), Ohio's robbery statute, provides "[n]o person, in attempting or committing a theft offense or in fleeing immediately after" shall "[h]ave a deadly weapon on or about the offender's person," "[i]nflict, attempt to inflict, or threaten

to inflict physical harm on another," or "[u]se or threaten the immediate use of force against another." The culpable mental state for robbery is "recklessly." *State v. Easley*, 10th Dist. No. 08AP-755, 2009-Ohio-2984, ¶ 27.

{¶ 26} In demonstrating appellant purposely aided and abetted the commission of the aggravated burglary and knowingly aided and abetted the aggravated robbery, the state necessarily met its burden of demonstrating appellant recklessly aided and abetted the commission of the two robbery counts as all of these charges stemmed from the home-invasion robbery of the Gravelys' residence. *State v. Blackburn*, 10th Dist. No. 12AP-217, 2012-Ohio-6229, ¶ 13, citing R.C. 2901.22(E).

{¶ 27} Accordingly, because there was sufficient evidence to sustain appellant's convictions for aggravated burglary, aggravated robbery, and the two robbery counts, we overrule appellant's first assignment of error.

## IV. Second Assignment of Error – Crim.R. 29 Motion

{¶ 28} In his second assignment of error, appellant asserts the trial court erred in overruling his Crim.R. 29 motion for acquittal. Similar to his first assignment of error, this assignment of error relates only to the aggravated burglary, aggravated robbery, and two robbery convictions and does not address the failure to comply with an order or signal of a police officer.

{¶ 29} Crim.R. 29(A) provides that the court, "on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Review of the denial of a Crim.R. 29 motion and of the sufficiency of the evidence apply the same standard. *State v. Fugate*, 10th Dist. No. 12AP-194, 2013-Ohio-79, ¶ 5, citing *State v. Turner*, 10th Dist. No. 04AP-364, 2004-Ohio-6609, ¶ 8, citing *State v. Ready*, 143 Ohio App.3d 748 (11th Dist.2001).

{¶ 30} As we stated above in our resolution of appellant's first assignment of error, there was sufficient evidence to support appellant's convictions for aggravated burglary, aggravated robbery, and the two counts of robbery. Thus, because appellant's Crim.R. 29 motion depends on the same standard as his sufficiency of the evidence argument, we similarly overrule appellant's second assignment of error.

**V. Third Assignment of Error – Manifest Weight of the Evidence**

{¶ 31} In his third assignment of error, appellant argues that, even if there was sufficient evidence to support his convictions, his convictions were nonetheless against the manifest weight of the evidence. Unlike his first two assignments of error, this assignment of error applies to all five of appellant's convictions. As to the aggravated burglary, aggravated robbery, and two robbery convictions, appellant raises the same arguments as he advanced in his first and second assignments of error. As to the failure to comply with an order or signal of a police officer, appellant argues the jury clearly lost its way when it did not find that appellant was acting under duress.

{¶ 32} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 33} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence in only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

## A. Aggravated Burglary, Aggravated Robbery, and Two Robbery Convictions

{¶ 34} For the aggravated burglary, aggravated robbery, and both robbery convictions, appellant argues the jury clearly lost its way in determining that appellant was complicit in these offenses because there was little or no evidence suggesting appellant had a connection to, or a relationship with, Smith prior to the commission of the offenses. To be criminally liable under a complicity theory, however, the state need not prove such a relationship prior to the commission of the offenses. Instead, it is enough that the state show a common purpose to commit the offenses, which, as we have already explained, can be inferred from the defendant's conduct before, during, and after the commission of the offenses. *Kendricks* at ¶ 16.

{¶ 35} In light of the evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in concluding appellant acted to aid and abet Smith in the commission of these offenses when he acted as the getaway driver. Appellant was waiting in an idling car near the victim's house and subsequently led police on a high-speed chase to elude capture. The only evidence to the contrary was appellant's self-serving testimony, and we agree with the jury's decision to discount that testimony in favor of the other evidence at trial. Thus, we do not find appellant's convictions for aggravated burglary, aggravated robbery, and two counts of robbery are against the manifest weight of the evidence.

## B. Failure to Comply with an Order or Signal of a Police Officer

{¶ 36} Finally, appellant argues the jury clearly lost its way when it did not find appellant was acting under duress when he led police on a high-speed chase and disobeyed their signals to pull over.

{¶ 37} Pursuant to R.C. 2921.331(B), "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Appellant does not dispute that he drove the vehicle at high rates of speed and ignored visible and audible signals from police to pull over. Instead, he argues that he only operated the vehicle in that manner because he was under duress from Smith pointing a gun at him and commanding him to drive away.

{¶ 38} Duress is an affirmative defense. *State v. Thompson*, 10th Dist. No. 08AP-956, 2009-Ohio-3552, ¶ 26, citing *State v. Sappienza*, 84 Ohio St. 63, 73 (1911), and *State v. Getsy*, 84 Ohio St.3d 180, 198 (1998). Affirmative defenses " 'must be proved by a preponderance of the evidence.' " *State v. Mallory*, 10th Dist. No. 08AP-942, 2009-Ohio-2401, ¶ 26, quoting *State v. Poole*, 33 Ohio St.2d 18, 19 (1973). " 'Duress consists of any conduct which overpowers a person's will and coerces or constrains his performance of an act which he otherwise would not have performed. Consequently, one who, under the pressure of a threat from another person, commits what would otherwise be a crime may, under certain circumstances, be justified in committing the act and not be guilty of the crime.' " *Thompson* at ¶ 28, quoting *State v. Grinnell*, 112 Ohio App.3d 124, 144-45 (10th Dist.1996). The defense of duress requires the defendant to prove a sense of immediate, imminent death or serious bodily injury if he does not commit the act as instructed. *Id.*, citing *State v. Cross*, 58 Ohio St.2d 482 (1979). The force used to compel the defendant's conduct must remain constant, controlling the will of the otherwise unwilling actor during the entire time he commits the act, and it must be of such a nature that the defendant cannot safely withdraw. *Id.*, citing *State v. Good*, 110 Ohio App. 415, 419 (10th Dist.1960).

{¶ 39} Here, appellant argues he proved by a preponderance of the evidence that he drove the getaway vehicle under duress and that the jury clearly lost its way in concluding otherwise. The only evidence in support of appellant's affirmative defense of duress was his own testimony, in which he stated Smith pointed a gun at him and told him to flee. However, the jury was free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21, citing *Antill* at 67. Moreover, other evidence weighed heavily against appellant's testimony, including the fact that the gun was never recovered even though police apprehended Smith directly from the vehicle. Additionally, appellant testified he and Moore were rolling marijuana cigarettes in the car before Smith unexpectedly jumped in and forced him to drive, but police never found any marijuana in the vehicle. Also, appellant eventually jumped out of the vehicle and continued to elude police on foot even though Smith remained in the vehicle. Appellant could not explain why he continued to run from police once the vehicle was stopped if he were truly acting under duress.

{¶ 40} Accordingly, we do not find the jury clearly lost its way when it did not conclude appellant acted under duress. Thus, appellant's conviction for failure to comply with an order or signal of a police officer is not against the manifest weight of the evidence. We overrule appellant's third assignment of error.

## VI. Disposition

{¶ 41} Based on the foregoing reasons, the sufficiency of the evidence and the manifest weight of the evidence support appellant's convictions, and the trial court did not err in overruling appellant's Crim.R. 29 motion for acquittal. Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and KLATT, J., concur.