[Cite as *State v. Shuttlesworth*, 2014-Ohio-5206.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLANT,              CASE NO.  5-14-13

      v.

TRENTON L. SHUTTLESWORTH,         O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2013 CR 00255

**Judgment Affirmed**

**Date of Decision:   November 24, 2014**

APPEARANCES:

    *Alex K. Treece* **for Appellant**

    *Dennis W. McNamara*  **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-appellant, the State of Ohio, appeals the June 9, 2014 judgment of the Hancock County Court of Common Pleas granting a motion to suppress evidence filed by defendant-appellee, Trenton L. Shuttlesworth ("Shuttlesworth"), and excluding 1,066 pills of Oxycodone seized from Shuttlesworth's coat pocket during a search by law enforcement from being used in the State's case-in-chief. The State subsequently filed this appeal pursuant to Crim.R. 12(K) and asserted that it could not proceed with the Aggravated Possession of Drugs charge against Shuttlesworth as a result of the trial court's judgment.

{¶2} On Monday, November 18, 2013, at approximately 11:45 a.m., Sergeants Michael Walter and Kurt Beidelschies of the Ohio State Highway Patrol were conducting a stationary patrol while positioned on a median crossover on I-75. Each Sergeant independently noticed that Shuttlesworth's vehicle was traveling too closely to the vehicle immediately in front of it. Sergeant Walter pulled his patrol cruiser out of the crossover and followed Shuttlesworth's vehicle. The Sergeants then observed Shuttlesworth's vehicle cross the white fog line twice. Sergeant Walter illuminated the overhead lights on his patrol cruiser and initiated the traffic stop.

{¶3} Once stopped, both Sergeants approached Shuttlesworth's vehicle—Sergeant Beidelschies from the driver side and Sergeant Walter from the passenger side. Both Sergeants independently detected a "very strong" odor of raw marijuana emanating from the passenger compartment of Shuttlesworth's vehicle. Sergeant Walter asked Shuttlesworth to exit the vehicle so that a search of the vehicle could be performed. Sergeant Beidelschies then reported twice detecting a "strong" odor of raw marijuana emanating from Shuttlesworth's person while Shuttlesworth was outside of the vehicle.

{¶4} Sergeant Beidelschies determined he had probable cause to search Shuttlesworth's person. During the search, Sergeant Beidelschies discovered in Shuttlesworth's coat pocket a plastic sandwich size bag containing pills suspected to be Oxycodone. Sergeant Beidelschies arrested Shuttlesworth and placed him in Sergeant Walter's patrol cruiser. The vehicle search did not uncover any illicit drugs including any amount of marijuana. It was later determined that the plastic bag retrieved from Shuttlesworth's coat pocket during Sergeant Beidelschies' search of his person contained 1,066 pills of Oxycodone, a Schedule II controlled substance.

{¶5} On November 26, 2013, the Hancock County Grand Jury indicted Shuttlesworth on one count of Aggravated Possession of Drugs in violation of R.C. 2925.11(A), a felony of the first degree.

{¶6} On February 3, 2014, Shuttlesworth filed a motion to suppress evidence, asserting that the Oxycodone found on his person was the result of an illegal search and seizure.

{¶7} On May 7, 2013, the trial court held a hearing on Shuttlesworth's motion to suppress, where the State presented the testimony of Sergeants Walter and Beidelschies. The video recording from Sergeant Walter's patrol cruiser documenting the traffic stop and subsequent search of Shuttlesworth's person was admitted as a joint exhibit. The evidence at the hearing revealed that the two Sergeants did not converse after the initiation of the traffic stop and that Sergeant Beidelschies' decision to search Shuttlesworth's person was based solely upon his olfactory detection of raw marijuana coming from Shuttlesworth's body outside of the vehicle. Accordingly, the trial court concluded that Sergeant Beidelschies' testimony and the video recording were the only pieces of evidence relevant in determining whether there was probable cause to search Shuttlesworth.

{¶8} On June 9, 2014, the trial court issued a decision finding Sergeant Beidelschies' testimony regarding his detection of a "strong" odor of raw marijuana on Shuttlesworth's person was not credible. The trial court then concluded that Sergeant Beidelschies did not have the requisite probable cause to search Shuttlesworth's person and granted Shuttlesworth's motion to suppress the Oxycodone seized as a result of the illegal search.

{¶9} The State subsequently filed this appeal pursuant to Crim.R. 12(K) and asserted that it could not proceed with the prosecution of the case without the suppressed evidence.

*Assignment of Error*

**THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEE'S MOTION TO SUPPRESS WHEN ITS FINDINGS WERE NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE.**

{¶10} In its sole assignment of error, the State argues that the trial court erred in granting Shuttlesworth's motion to suppress based on its determination that Sergeant Beidelschies lacked probable cause to conduct a search of Shuttlesworth's person.

{¶11} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *See State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo; and, therefore, we must decide whether the facts satisfy the

applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶12} At the outset we note that a search is reasonable pursuant to the Fourth Amendment to the United States Constitution if it is based upon probable cause and executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507 (1967). This requires first that there be probable cause, which is a reasonable grounds for the belief of guilt. *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10. "Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate." *Id*. at 49. Once probable cause is found, an officer must obtain a search warrant unless an exception to the warrant requirement applies. *Id*. "If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed." *Id*., citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684 (1961).

{¶13} In the instant case, the trial court determined that the State failed to establish that Sergeant Beidelschies had probable cause to search Shuttlesworth's person. Specifically, the trial court found Sergeant Beidelschies' testimony at the suppression hearing regarding his detection of a "strong" odor of raw marijuana on Shuttlesworth's person was "not believable." (Doc. No. 30 at 13). As noted by the trial court, Sergeant Beidelschies' testimony and the video recording of the stop were the only relevant pieces of evidence presented in support of Sergeant

Beidelschies' claims that he obtained the requisite probable cause to conduct a search of Shuttlesworth's person. Sergeant Beidelschies' testimony revealed the following at the suppression hearing.

{¶14} Sergeant Beidelschies testified that he has been employed by the Ohio State Highway Patrol for eight years and that for the last two years he has been assigned to the special operations criminal patrol for the Findlay District. He explained that as part of his employment he is trained to identify the odor of both burnt and raw marijuana and that in his current assignment he "literally" sees, smells, and touches, marijuana "every single day." (Tr. at 74).

{¶15} Sergeant Beidelschies recalled the day that he and Sergeant Walter conducted the traffic stop of Shuttlesworth's vehicle on I-75 near Findlay. He explained that he is a certified instructor for the drug interdiction assistance program and on that particular day he was riding with Sergeant Walter to advise him on certain drug interdiction methods. He recalled that they were positioned on a median crossover near mile marker 160 when he observed Shuttlesworth's vehicle travelling to closely to the vehicle in front of it.[1] Sergeant Beidelschies testified that as Shuttlesworth's vehicle passed his location, he noticed that Shuttlesworth was seated in a "leaned back" position in the driver seat. (Tr. at 77).

---

[1] Sergeant Walter testified that when he first observed Shuttlesworth's vehicle, he estimated the vehicle to be travelling 55-57 mph while only maintaining approximately one car length distance from the vehicle travelling immediately ahead.

He also spotted a barcode on the rear passenger window, which indicated that the vehicle was a rental car. He further stated that he observed an "old crumbly looking chair" in the vehicle. (Tr. at 78). After Shuttlesworth's vehicle passed him, Sergeant Beidelschies noticed the vehicle had Tennessee license plates.[2] He recalled that these items "piqued [his] curiosity" because they are clues he looks for when engaging in drug interdiction. (Tr. at 96).

{¶16} As they approached Shuttlesworth's vehicle, Sergeant Beidelschies observed the vehicle drift over the white fog line twice, hitting the rumble strips on the second time. Once the patrol cruiser was positioned behind Shuttlesworth's vehicle, he stated that Sergeant Walter illuminated his overhead lights to initiate the traffic stop.

{¶17} Sergeant Beidelschies testified that Sergeant Walter first approached the passenger side of the vehicle to make contact with Shuttlesworth. He stated that he did not make any contact with Shuttlesworth while Shuttlesworth was in the vehicle. He also recalled that it was an extremely windy and blustery November day, preventing him from hearing the conversation between Shuttlesworth and Sergeant Walter. Notably, the video recording of the stop demonstrates that, at times, the wind was so forceful that Sergeant Walter had to

---

[2] Sergeant Beidelschies explained that the Tennessee license plates were significant because it is well known to law enforcement engaging in drug interdiction on I-75 that West Virginia, Kentucky and Tennessee are "pill hubs" for distributing contraband from Toledo and Detroit. (Tr. at 96).

brace himself against the vehicle as he spoke to Shuttlesworth and his necktie vigorously flapped in the wind.

{¶18} Sergeant Beidelschies explained that he approached the driver side of the vehicle as Sergeant Walter conversed with Shuttlesworth on the passenger side. He testified that the front driver side widow was rolled down approximately three to four inches allowing him to detect a "very strong" odor of raw marijuana emanating from the vehicle. He recalled that the wind was blowing southwest at a 45 degree angle through Shuttlesworth's vehicle and into his face. He remembered being concerned that Sergeant Walter was unable to detect the odor of raw marijuana emanating from the vehicle because the wind was blowing away from where Sergeant Walter was positioned at the passenger side. Sergeant Beidelschies then walked around to the passenger side to tell Sergeant Walter about the odor. However, before he could say anything, Sergeant Walter walked around to the driver side door and directed Shuttlesworth to exit the vehicle.

{¶19} Sergeant Beidelschies testified that while still standing on the passenger side, he detected a "strong" odor of raw marijuana emanating from Shuttlesworth's person as Shuttlesworth exited through the driver side door on the other side of the vehicle. The video recording shows that Sergeant Beidelschies was leaning down into the passenger compartment through the passenger side front window as Shuttlesworth exited the vehicle.

{¶20} Sergeant Beidelschies recalled that he then walked to the back of Shuttlesworth's vehicle near the front of the patrol cruiser where Shuttlesworth had been directed to stand by Sergeant Walter after exiting his vehicle. Sergeant Beidelschies stated that as he approached Shuttlesworth he again detected a "strong" odor of raw marijuana emanating from Shuttlesworth. He testified that he had a brief exchange with Shuttlesworth, which the video shows lasted for a matter of seconds. He recalled informing Shuttlesworth that he could smell the odor of raw marijuana coming from his body and asked if he had any marijuana on his person. Sergeant Beidelschies stated Shuttlesworth "never said a word." (Tr. at 83). Sergeant Beidelschies then conducted a "probable cause search" of Shuttlesworth based on his detection of raw marijuana emanating from Shuttlesworth's person. (Tr. at 84). During the search, Sergeant Beidelschies uncovered a plastic bag of Oxycodone from Shuttlesworth's coat pocket. Upon finding the pills, Sergeant Beidelschies made the decision to place Shuttlesworth under arrest.

{¶21} At the suppression hearing, Sergeant Beidelschies maintained that he conducted the search of Shuttlesworth based solely on his olfactory detection of raw marijuana emanating from Shuttlesworth's person and that there was no officer safety issue precipitating the search. He also testified that even though no marijuana was found either on Shuttlesworth's person or in his vehicle, a "very

strong" odor of raw marijuana continued to emanate from Shuttlesworth and the plastic bag of pills at the patrol post. However, Sergeant Beidelschies stated that his own clothes did not smell of raw marijuana after he drove Shuttlesworth's rental vehicle to the patrol post.[3]

{¶22} In its decision to grant Shuttlesworth's motion to suppress, the trial court acknowledged the State's assertion that Sergeant Beidelschies obtained the requisite probable cause to search Shuttlesworth's person based solely on Sergeant Beidelschies' claims that he smelled a "strong" odor of raw marijuana coming from Shuttlesworth's body, outside of the vehicle. The trial court then stated that:

> **It is therefore incumbent upon the Court to analyze the existing evidence to determine if Beidelschies did smell the odor of raw marijuana about the Defendant as he described in his testimony.** *Necessarily this analysis involves a determination of Beidelschies' credibility.*

(Doc. 30 at 10) (Emphasis added). The trial court thoroughly analyzed Sergeant Beidelschies' testimony regarding what had transpired during the traffic stop together with the video recording obtained from Sergeant Walter's patrol cruiser. After reviewing this evidence the trial court concluded the following in its decision granting the motion to suppress.

> **Perhaps Beidelschies "anticipated" or "expected" the odor to be present when Shuttlesworth approached him based upon what**

---

[3] Sergeant Walter testified that after he was arrested, Shuttlesworth told an investigator with the Ohio State Highway Patrol that he had received the Oxycodone from a residence in Toledo were raw marijuana was present. Sergeant Walter assumed that the odor of raw marijuana must have permeated Shuttlesworth's clothes and the plastic bag containing the Oxycodone.

**he smelled near the car, but logic and common sense, the short sequence of events, Beidelschies' own statements and the visual evidence leads this Court to the conclusion that his testimony on this point is not believable.**

(Doc. No. 30 at 13).

{¶23} On appeal, the State contends that the trial court erred in concluding that Sergeant Beidelschies' testimony was not credible to establish that he had probable cause to conduct a search of Shuttlesworth's person and requests this Court reverse the trial court's decision on this basis.

{¶24} Whether or not we may have been inclined to accept Sergeant Beidelschies' testimony that Shuttlesworth indeed smelled of a "strong" odor of raw marijuana is not relevant to our consideration of the issue raised on appeal. Although the trial court acknowledged that Sergeant Beidelschies was qualified and experienced in the detection and identification of the odor of raw marijuana in general, the trial court apparently had difficulty accepting Sergeant Beidelschies' claims in this instance that he smelled a "strong" odor of raw marijuana coming from Shuttlesworth's body given the weather conditions present that day and Sergeant Beidelschies' statements regarding the direction of the wind. The trial court also found the video evidence documenting the traffic stop to be inconsistent with Sergeant Beidelschies' testimony regarding his olfactory detection of raw marijuana on Shuttlesworth's person. And it is notable that the trial court based its

decision to suppress the evidence squarely upon its determination that Sergeant Beidelschies' testimony was not credible.

{¶25} As previously noted, the trial court was in the best position to resolve factual questions and evaluate the credibility of the witnesses. *See State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Therefore, we defer to the trial court's credibility determination of Sergeant Beidelschies' testimony and find that the record establishes that the trial court's factual findings were supported by competent, credible evidence. Accordingly, we cannot conclude that the trial court erred in granting Shuttlesworth's motion to suppress on the basis that Sergeant Beidelschies lacked the requisite probable cause to conduct a search of Shuttlesworth's person.

{¶26} Because we have determined that the trial court did not err in finding the State failed to establish probable cause we do not need to examine whether an exception to the warrant requirement was present. Therefore, the assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**WILLIAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**