[Cite as *State v. Brent*, 2014-Ohio-5246.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-187 |
| v. | : | (C.P.C. No. 12CR-4331) |
| Tina R. Brent, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 25, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

*Cline, Mann & Co. LLC*, and *Richard A. Cline*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Tina R. Brent, appeals from a judgment of the Franklin County Court of Common Pleas convicting her following a jury trial of one count of witness intimidation.[1] Because sufficient evidence and the manifest weight of the evidence support appellant's conviction for witness intimidation, we affirm.

I. Facts and Procedural History

{¶ 2} On August 15, 2012, appellant assaulted the victim, Mariah Card, at appellant's house located at 675 East Columbus Street in Columbus, Ohio. Appellant's son, Damonte White, as well as Paris Boone and sisters Jasmine and Toni Long also participated in the assault. At the time of the assault, Mariah had been dating another son

---

[1] The jury also convicted appellant of one count of assault but she is not appealing that conviction.

of appellant's, Vincent White.  Vincent had been named as a suspect in the recent murder of two individuals on July 29, 2012.  Mariah had been at the house with the murder victims earlier that day.  Police had also identified Paris as a suspect in the double homicide.

{¶ 3}  Vincent turned himself into police on August 8, 2012.  While in jail, Mariah spoke with Vincent by phone and visited him on several occasions.  At times Mariah was accompanied to the jail by either appellant or Damonte.   Mariah also continued to spend time with Damonte and Paris at appellant's home after Vincent's arrest.

{¶ 4}  On August 15, 2012, Damonte called and invited Mariah to appellant's house to smoke marijuana with him and Paris.  At the time, Damonte and Paris were with appellant, Jasmine, and Toni, planning an assault on Mariah.  Mariah arrived at appellant's house before the others and waited in her car until they arrived.  When appellant and the others arrived, Mariah exited her car and went onto the porch with Damonte and Paris.  While Mariah waited to go inside the house, appellant came onto the porch and punched Mariah in the face.  Mariah testified that as appellant hit her, appellant stated she had been "running her mouth" about Vincent's case.  (Tr. Vol. I, 160.)

{¶ 5}  After appellant hit Mariah, Jasmine, Toni, Damonte, and Paris each attacked Mariah.  Eventually, Mariah escaped and ran to a nearby gas station.  While Mariah was running toward the gas station, Jasmine smashed in Mariah's car windows with a large rock.  Mariah sustained multiple abrasions and bruises as a result of the assault.

{¶ 6}  On August 16, 2012, the police arrested Paris in connection with the double homicide and seized a cell phone containing several videos.  Columbus Police Detective Robert Connor, Jr., obtained a search warrant and recovered data files from the phone, including five videos dated August 15, 2012.  The state played portions of the videos at trial.  The videos revealed appellant and the others involved in Mariah's assault in a vehicle discussing Mariah and planning to attack her for talking about Vincent's criminal case.

{¶ 7}  The videos also revealed appellant stating multiple times that Mariah "know[s] too much" about Vincent's criminal case.  (Tr. Vol. I, 106.)   During the recorded conversation, the vehicle's occupants were concerned that Mariah would "rat" regarding what she knew about the double homicide.  (Tr. Vol. I, 160.)  They expressed concerns she "might be recording everything," including her phone calls with Vincent.  (Tr. Vol. I, 109.)  Appellant also inquired whether Mariah had been discussing what happened inside the

house at the time of the homicides.  At one point, the group exchanged the following dialogue regarding information Mariah had about the homicides:

> So who [Mariah] say – who [Mariah] tell that he was on – (inaudible) – snitching on.
>
> No.  [Mariah] ain't tell me nobody's name.  She just said that – –
>
> [Mariah]'s saying like what happened in the house?  Like, she said this, this happened, this happened?
>
> [Mariah] say he was in the bathroom and his people – –
>
> She talking too much.
>
> * * *
>
> I'm whoop her ass.

(Tr. Vol. I, 97.)

{¶ 8}  After hearing the audio at trial, Toni Long testified she recalled the conversation and stated that "[b]asically, Mariah had told me everything."  (Tr. Vol. II, 228.)  Toni also confirmed that appellant planned the attack on Mariah because she "was running her mouth about [Vincent's] case."  (Tr. Vol. II, 257.)

{¶ 9}  After the state rested its case, appellant's counsel moved for a judgment of acquittal pursuant to Crim.R. 29 as to the witness intimidation charge.  The trial court denied appellant's motion.  The jury convicted appellant of one count of assault, in violation of R.C. 2903.13, and one count of intimidation of a crime victim or witness, in violation R.C. 2921.04.  Appellant appealed that decision to this court on March 5, 2014 with respect to the witness intimidation count only.

## II. Assignment of Error

> The trial court erred in denying Defendant's Criminal Rule 29 Motion for Acquittal of the Witness Intimidation charge because insufficient evidence existed to show that [Mariah] was a "witness" at the time of the assault. Alternatively, the Witness Intimidation conviction was against the manifest weight of the evidence.

## III. Discussion

{¶ 10} In her sole assignment of error, appellant contends the trial court erred in denying her motion for acquittal under Crim.R. 29. Specifically, appellant asserts the state presented insufficient evidence to establish that Mariah was a "witness" as that term is defined in R.C. 2921.04. In the alternative, appellant argues her conviction for witness intimidation was against the manifest weight of the evidence. We disagree with both arguments.

{¶ 11} Crim.R. 29(A) provides that a trial court, "on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." The standard of review for the denial of a Crim.R. 29 motion is the same as the standard for sufficiency of the evidence review. *State v. Fugate*, 10th Dist. No. 12AP-194, 2013-Ohio-79, ¶ 5, citing *State v. Turner*, 10th Dist. No. 04AP-364, 2004-Ohio-6609, ¶ 8, citing *State v. Ready*, 143 Ohio App.3d 748 (11th Dist.2001).

{¶ 12} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 13} Appellant was convicted of one count of intimidation of a witness. R.C. 2921.04 states, in part:

> (A) [N]o person shall knowingly attempt to intimidate a witness to a criminal or delinquent act by reason of the person being a witness to that act.
>
> (B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

* * *

(2) A witness to a criminal or delinquent act by reason of the person being a witness to that act;

* * *

(E) As used in this section, **"witness" means any person who has or claims to have knowledge concerning a fact or facts concerning a criminal or delinquent act, whether or not criminal or delinquent child charges are actually filed**.

(Emphasis added.)

{¶ 14} Appellant argues that because Mariah claimed at trial that she did not have information related to the homicides, she cannot be a witness. We disagree. Mariah's denial of any knowledge of facts concerning the homicides was contradicted by the evidence presented at trial. The evidence showed Mariah spent time with the homicide victims at their house just prior to the homicides. Police charged Mariah's boyfriend at the time, Vincent, with the double homicide. Further, Mariah spoke with Vincent both in person at the jail and by phone after he was arrested. The video presented at trial revealed the occupants of appellant's vehicle discussing that Mariah may have mentioned information related to a bathroom at the scene of the double homicide. At trial, Detective Connor testified that, during the investigation of the homicides, allegations arose involving the bathroom at the scene. Further, Toni testified at trial that Mariah had, indeed, discussed facts Vincent told her about the homicide case.

{¶ 15} The evidence at trial established that Mariah was assaulted because of her knowledge of Vincent's case. After Mariah disclosed to Toni certain facts regarding the homicides, Toni told her sister, Jasmine, that Mariah had revealed information to her regarding Vincent's case. Jasmine then told appellant that Mariah had been discussing facts about her son Vincent's case. After hearing that Mariah was discussing her son's case, appellant became upset and said she wanted to "whoop [Mariah's] ass." (Tr. Vol. II, 216.) Toni's testimony supported Mariah's testimony that as appellant hit Mariah, appellant accused Mariah of discussing her son's criminal case. Specifically, Toni testified that

appellant "walked up to Mariah said, Bitch, you running your mouth about my son's case." (Tr. Vol. II, 223.)

{¶ 16} Based on the testimony presented at trial, a rational juror, who is in the best position to determine the credibility of both Mariah and Toni, could conclude that Mariah had knowledge of facts about Vincent's case even though she denied such knowledge, thereby making her a "witness" as that term is defined in R.C. 2921.04(E). Furthermore, the audio recordings presented at trial showed appellant and the others in appellant's car discussing attacking Mariah because of what she knew about Vincent's case. This evidence, along with the testimony from Mariah and Toni describing appellant's assault on Mariah was sufficient to prove appellant acted knowingly and by force to influence, intimidate or hinder Mariah in her capacity as a witness to facts concerning a criminal act. Therefore, legally sufficient evidence supported appellant's conviction for witness intimidation. Accordingly, the trial court did not err in denying appellant's Crim.R. 29 motion.

{¶ 17} Because we conclude there was sufficient evidence to sustain appellant's witness intimidation conviction, we must next determine whether that conviction was against the manifest weight of the evidence. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-87. When addressing a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent and credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387.

{¶ 18} When addressing a manifest weight challenge, an appellate court "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. An appellate court should reserve reversal of a conviction as being

against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 19} As discussed above, the weight of the evidence presented at trial demonstrates the jury did not lose its way in finding appellant guilty of witness intimidation. The state presented evidence establishing appellant assaulted Mariah because Mariah knew facts about Vincent's criminal case and appellant was concerned Mariah was "talking too much." In the lengthy audio recording presented at trial, appellant stated numerous times that Mariah "knew too much" and that was appellant's motivation for assaulting Mariah. Additionally, Toni testified that Mariah told her Vincent communicated facts to Mariah about the homicides. Mariah also admitted she was at the murder scene a short time before the crimes occurred.

{¶ 20} Further, the evidence and testimony established Mariah learned of facts regarding the homicides despite her denial of the same. When convictions are based in a large part on the testimony of an individual, the trier of fact is in the best position to determine a witness's credibility and is free to believe or disbelieve any or all of the testimony. *State v. Thompson*, 10th Dist. No. 07AP-491, 2008-Ohio-2017, ¶ 35. Therefore, the fact Mariah testified she was unaware of any facts regarding the homicides does not remove her from the statutory definition of a witness.

{¶ 21} After a thorough review of the entire record, we find the state presented sufficient evidence to support appellant's conviction for witness intimidation and the conviction was not against the manifest weight of the evidence. We, therefore, overrule appellant's sole assignment of error.

## IV. Conclusion

{¶ 22} We conclude appellant's conviction for witness intimidation was supported by legally sufficient evidence and was not against the manifest weight of the evidence. Accordingly, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

_____