[Cite as *State v. Fonseca*, 2016-Ohio-7348.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                    CASE NO.  7-16-04

      v.

TONY FONSECA,                             O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 15CR0042

**Judgment Affirmed**

**Date of Decision:   October 17, 2016**

APPEARANCES:

    *Todd B. Guelde* for Appellant

**PRESTON, J.**

{¶1} Defendant-appellant, Tony Fonseca ("Fonseca"), appeals the February 4, 2016 judgment entry of sentence of the Henry County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from an incident on April 20, 2015 in which Fonseca threatened Charles Schroeder ("Schroeder") because Schroeder reported to law enforcement in November 2014 that he observed suspicious activity at Fonseca's house. Schroeder was hired by Fonseca's landlord to provide masonry-repair work at the house. Schroeder reported to law enforcement that, while he was working at the house, he observed a lot of traffic coming and going from the house, and that marijuana and cat-urine odors were coming from the house.

{¶3} On May 7, 2015, the Henry County Grand Jury indicted Fonseca on one count of intimidation of a witness in a criminal case in violation of R.C. 2921.04(B)(2), a third-degree felony. (Doc. No. 1).

{¶4} On May 29, 2015, Fonseca appeared for arraignment and entered a plea of not guilty. (Doc. No. 11).

{¶5} The case proceeded to a jury trial on January 4-5, 2016. (Doc. No. 19). The jury found Fonseca guilty as to the count in the indictment. (Doc. Nos. 19, 21); (Jan. 4-5, 2016 Tr. at 234). The trial court filed its judgment entry of conviction on

January 5, 2016. (Doc. No. 19). On February 4, 2016 the trial court sentenced Fonseca to 36 months in prison. (Doc. No. 23); (Feb. 4, 2016 Tr. at 11).

{¶6} On February 23, 2016, Fonseca filed his notice of appeal.[1] (Doc. No. 25). He raises two assignments of error for our review.

**Assignment of Error No. I**

**Appellant's Conviction Was Not Supported by Sufficient Evidence and the Trial Court Erred When it Denied Appellant's Motion for Acquittal.**

{¶7} In his first assignment of error, Fonseca argues that the trial court erred by overruling his Crim.R. 29 motion for acquittal. Specifically, Fonseca argues that his intimidation-of-a-witness-in-a-criminal-case conviction is based on insufficient evidence—namely, that there is insufficient evidence that the witness was a witness as defined by the statute.

{¶8} "Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Tatum*, 3d Dist. Seneca No. 13-10-18, 2011-Ohio-3005, ¶ 43, citing *State v. Bridgeman*, 55 Ohio St.2d 261, 263 (1978). "A motion

---

[1] The State failed to file an appellee's brief in this case. As such, "in determining the appeal, this court may accept [Fonseca's] statement of the facts and issues as correct and reverse the judgment if his appellate brief reasonably appears to sustain such action." *State v. Kleinhans*, 7th Dist. Noble No. 14 NO 425, 2015-Ohio-5007, ¶ 10, citing App.R. 18(C).

for acquittal tests the sufficiency of the evidence." *Id.*, citing *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist.1996).

**{¶9}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997), fn. 4. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

**{¶10}** The criminal offense of intimidation of a witness in a criminal case is codified in R.C. 2921.04, which provides, in relevant part:

No person, knowingly and by force or by unlawful threat of harm to any person * * * or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

* * *

(2)   A witness to a criminal * * * act by reason of the person being a witness to that act.

R.C. 2921.04(B)(2).

**{¶11}** Because it is the only element that Fonseca challenges on appeal, we will address only whether the State presented sufficient evidence that the victim-witness, Charles Schroeder ("Schroeder"), is a witness as defined under the statute. The statute defines a "witness" as "any person who has or claims to have knowledge concerning a fact or facts concerning a criminal * * * act, whether or not criminal * * * charges are actually filed."  R.C. 2921.04(E).[2]

**{¶12}** Fonseca argues that the State failed to prove that Schroeder "possessed or claimed to possesses [sic] knowledge concerning a criminal act."  (Appellant's Brief at 7).  More specifically, Fonseca argues that Schroeder did not have

---

[2] R.C. 2921.04 was amended in 2012 to add the definition of a witness.  2012 Sub.H.B. 20, 2012 Ohio Laws, File 83.  *See also State v. Davis*, 132 Ohio St.3d 25, 2012-Ohio-1654, fn.1 (acknowledging the General Assembly's amendment of R.C. 2921.04 broadened the definition of a "witness" under the statute).

knowledge of a criminal act because Schroeder was not trained in detecting the odor of marijuana.

{¶13} In support of his argument, Fonseca relies on *State v. Shuttlesworth* in which this court affirmed the trial court's suppression of marijuana evidence seized as part of a probable-cause search of Shuttlesworth. 3d Dist. Hancock No. 5-14-13, 2014-Ohio-5206. In that case, the trial court did not find the arresting officer's "testimony regarding his olfactory detection of raw marijuana on Shuttleworth's person" credible despite that the arresting officer "was qualified and experienced in the detection and identification of the odor of raw marijuana in general[.]" *Id.* at ¶ 24. In this case, Fonseca argues that, since the arresting officer's testimony in *Shuttlesworth*, which was based on his qualification and experience in detecting the odor of marijuana, was not credible to form the basis for the probable-cause search, "there was insufficient evidence presented as to Schroeder being a 'witness' as defined in R.C. 2921.04(E)." (Appellant's Brief at 9). That is, he argues there is "not sufficient evidence to support that Schroeder had knowledge of a 'criminal act'" since "[p]ermitting a lay person's belief as to a particular smell of an illegal drug should not constitute sufficient evidence of a criminal act." (*Id.*).

{¶14} Fonseca's argument is erroneous. The State presented sufficient evidence that Schroeder is a witness as defined under R.C. 2921.04(E). That is, based on the testimony presented at trial, a rational juror, could conclude that

Schroeder had knowledge concerning facts concerning a criminal act—namely, knowledge of facts concerning drug-related activity—making him a witness as defined by R.C. 2921.04(E). *See State v. Brent*, 10th Dist. Franklin No. 14AP-5246, 2014-Ohio-5246, ¶ 16.

{¶15} Schroeder testified that he was performing masonry-repair work in November 2014 at a residence located at 327 East Clinton Street, Napoleon, Ohio and observed suspicious activity. (Jan. 4-5, 2016 Tr. at 114-115). In particular, he reported to law enforcement that he "was able to smell dope coming out of the house, basically that there was a lot of traffic coming and going at the residence." (*Id.* at 115). He also reported that he smelled the odor of cat urine. (*Id.* at 115-116). Schroeder testified that he saw the occupants of the residence while he was working there, including Fonseca. (*Id.* at 116). Schroeder testified that, on April 20, 2015, he was again at the residence and Fonseca made threatening statements to him regarding his report to law enforcement. (*Id.* at 118-120). In particular, Schroeder testified that Fonseca said "he heard that [Schroeder] had said some foul shit to the cops, told them that [Fonseca's] house smelled like cat piss and dope and * * * went on to say that if [Schroeder] had something to say then [he] should step into the street right now and we can deal with this[.]" (*Id.* at 119). He further testified that Fonseca threatened that Schroeder "pissed a lot of people off, now he knows who [Schroeder is] and [he is] going to get [his]." (*Id.*).

{¶16} Detective Jamie Mendez ("Detective Mendez") of the Napoleon Police Department testified that he obtained a search warrant for the residence based on Schroeder's report. (*Id.* at 64-66, 68). Detective Mendez testified that the affidavit on which the search warrant is based states,

> On November 5th, 2014 this officer spoke with two individuals who had been at the property located at 327 E. Clinton Street, Napoleon, Ohio. On multiple occasions during the past week these individuals provided their names and addresses to the police department however they did not want to be identified in any reports or requests for search warrants out of fear for their safety. These individuals stated that during the time they were at the subjects [sic] property they observed constant, vehicle, bicycle and foot traffic at the residence. They described the traffic _____ [sic] that people would come to the property, enter the residence and then leave several minutes later. These individuals stated that they were able to smell a strong odor coming from inside the residence that they recognize as marijuana. These individuals also described an occasion which they noted a strong odor coming from the residence that they described as a smell of cat urine…[sic]

(*Id.* at 68).

**{¶17}** Schroeder's report to law enforcement of his observations at the Clinton Street residence constitutes knowledge concerning facts concerning a criminal act. *See Brent*, 2014-Ohio-5246, at ¶ 14 (concluding that the victim-witness was a witness as defined by R.C. 2921.04(E) because the evidence presented at trial demonstrated that she "had knowledge of facts about [a homicide] case" even though she did not witness the homicide itself). That is, Schroeder's report that he observed "a lot of traffic coming and going at the residence" along with his observation of the marijuana and cat-urine odors coming from that residence is knowledge concerning facts concerning drug-related activity. (Jan. 4-5, 2015 Tr. at 115-116). *See State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, (noting that the smell of marijuana coupled with "other evidence" of drug activity can serve as probable cause of illegal activity), citing *State v. Price*, 6th Dist. Sandusky No. S-11-037, 2013-Ohio-130, ¶ 19 and *State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, ¶ 24. *See also State v. O'Neal*, 2d Dist. Montgomery No. 12593, 1991 WL 261676, *2 (Dec. 10, 1991) (noting that "heavy foot traffic is indicative of drug activity"); *State v. Cobb*, 5th Dist. Stark No. 2003-CA-00412, 2004-Ohio-4944, ¶ 2 (noting that "foot traffic in the area was indicative of drug trafficking"); *State v. Gale*, 105 Or.App. 489, 495, 805 P.2d 158 (1991) (noting that "chemicals used in manufacturing methamphetamine have a strong odor, often described as similar to cat urine"); *State v. Cardwell*, 119 Wash.App.

1051 (2003) (noting that the odor of cat urine is associated with methamphetamine labs).

**{¶18}** Moreover, a rational trier of fact could conclude that Schroeder had knowledge concerning facts concerning a criminal act involving Fonsenca based on Schroeder's testimony that Fonseca threatened him because of Schroeder's report to law enforcement. *See Brent* at ¶ 15-16 (concluding that evidence that the victim-witness was attacked "because of what she knew about [the] case" is evidence of knowledge concerning facts concerning a criminal act). That Schroeder did not witness the criminal act does not preclude him from being a witness as defined by R.C. 2921.04(E). *See State v. Fox*, 5th Dist. Licking No. 13-CA-71, 2014-Ohio-1652, ¶ 31 ("Appellant maintains he could not be convicted of intimidation of a witness because Spires was not a witness to the alleged offense as she did not see what occurred between himself and A.M. Appellant's assertion has no merit.").

**{¶19}** Accordingly, a rational trier of fact could have found beyond a reasonable doubt that Schroeder was a witness as defined under R.C. 2921.04(E). Therefore, a rational trier of fact could have found that Fonseca is guilty of intimidating a witness in a criminal case. *See Brent* at ¶ 16. As such, the trial court did not err in denying Fonseca's Crim.R. 29 motion.

**{¶20}** Fonseca's first assignment of error is overruled.

**Assignment of Error No. II**

**The Trial Court's Sentence of a Maximum Prison Term Was Unreasonable and Unconscionable.**

**{¶21}** In his second assignment of error, Fonseca argues that his maximum prison term is unconscionable. In particular, he argues "that there is not a particular factor in R.C. 2929.12(B) that makes [his] conduct more serious than conduct normally constituting the offense." (Appellant's Brief at 9).

**{¶22}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, ___ Ohio St.3d ___, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶23}** "It is well-established that the statutes governing felony sentencing no longer require the trial court to make certain findings before imposing a maximum sentence." *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 29, citing *State v. Dixon*, 2d Dist. Clark No. 2015-CA-67, 2016-Ohio-2882, ¶ 14 ("Unlike consecutive sentences, the trial court was not required to make any particular 'findings' to justify maximum prison sentences.") and *State v. Hinton*, 8th

Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 9 (The law no longer requires the trial court to make certain findings before imposing a maximum sentence.). Rather, "'trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 3d Dist. Seneca No. 13-15-17, 2015-Ohio-4225, ¶ 10, quoting *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana*, 3d Dist. Putnam No. 12-12-09, 2013-Ohio-1122, ¶ 20. As a third-degree felony, intimidation of a witness in a criminal case carries a non-mandatory sanction of 9 to 36 months imprisonment. R.C. 2921.04(D); R.C. 2929.13(C); R.C. 2929.14(A)(3)(b). Because the trial court sentenced Fonseca to 36 months in prison, the trial court's sentence falls within the statutory range. "[A] sentence imposed within the statutory range is 'presumptively valid' if the [trial] court considered applicable sentencing factors." *Maggette* at ¶ 31, quoting *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

{¶24} "R.C. 2929.11 provides, in pertinent part, that the 'overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender.'" *Smith* at ¶ 10, quoting R.C. 2929.11(A). "In advancing these purposes, sentencing courts are instructed to 'consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.'" *Id.*, quoting R.C. 2929.11(A). "Meanwhile, R.C. 2929.11(B) states that felony sentences must

-12-

be 'commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim' and also be consistent with sentences imposed in similar cases." *Id.*, quoting R.C. 2929.11(B). "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Id.*, citing R.C. 2929.12(A). "'A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12." *Id.* at ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000).

{¶25} "Although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the sentencing court is not required to 'state on the record that it considered the statutory criteria or discuss[ed] them.'" *Maggette* at ¶ 32, quoting *State v. Polick*, 101 Ohio App.3d 428, 431 (4th Dist.1995). "A trial court's statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes." *Id.*, citing *State v. Abrams*, 8th Dist. Cuyahoga No. 103786, 2016-Ohio-4570, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18. At Fonseca's sentencing hearing and in its sentencing entry, the trial court considered the R.C. 2929.11 and 2929.12 factors. (Feb. 4, 2016 Tr. at 10-11); (Doc. No. 19).

{¶26} In particular, in addressing the seriousness of Fonseca's conduct, the trial court concluded that Fonseca's "conduct is more serious than conduct normally constituting the offense" because society has an interest in encouraging the public to report suspected illegal activity to law enforcement and Fonseca's conduct in threatening Schroeder undermines that purpose—namely, the fear of retribution would undermine or prevent people from reporting suspected illegal activity and thwart the government's ability to effectively prosecute criminal offenses. (Feb. 4, 2016 Tr. at 11). The trial court did not find any factors under R.C. 2929.12(C) indicating that Fonseca's conduct is less serious than conduct normally constituting the offense. (*See* Feb. 4, 2016 Tr. at 10-11). In assessing whether Fonseca was likely to commit future crimes, the trial court weighed against Fonseca his prior record and his lack of remorse. (*Id.* at 11). *See also* R.C. 2929.12(D)(2), (5). The trial court did not find any factors indicating that Fonseca is likely to commit future crimes under R.C. 2929.12(E).

{¶27} On appeal, Fonseca appears to argue that the trial court abused its discretion in weighing the R.C. 2929.12 factors to sentence Fonseca to a maximum term of imprisonment. In particular, he challenges the trial court's conclusion that Fonseca's conduct was more serious than conduct normally constituting intimidation of a witness in a criminal case because none of the particular factors codified under R.C. 2929.12 applied indicating that Fonseca's conduct was more

serious than the conduct that normally constitutes that offense. Fonseca's argument is meritless because he disregards the language of the statute which states, "The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, *and any other relevant factors*, as indicating that the offender's conduct is more serious than conduct normally constituting the offense." (Emphasis added.) R.C. 2929.12(B).

{¶28} Nonetheless, even if we assume that the trial court erroneously considered Fonseca's condut to be more serious than conduct normally constituting intimidation of a witness in a criminal case, the trial court did not err in sentencing Fonseca to prison. Indeed, the trial court concluded that Fonseca is likely to commit future crimes based on his prior record and lack of remorse. *See* R.C. 2929.12(D). The trial court's conclusion that Fonseca is likely to commit future crimes is clearly and convincingly supported by the record. The trial court's presentence investigation ("PSI") report includes five pages detailing Fonseca's prior record. (PSI at 6-11). Moreover, the PSI report reflects that Fonseca committed, and was convicted of, crimes after he committed the offense underlying this appeal. (PSI at 10-11).

{¶29} Likewise, at Fonseca's sentencing hearing, Fonseca asserted that Schroeder lied in his testimony at trial. (Feb. 4, 2016 Tr. at 7-8). In particular, Fonseca proclaimed,

You know, if anybody noticed [Schroeder's] whole testimony of what I said flowed just nice until he said those words, [you better watch your back; you're going to get yours], those words didn't even sound like me, they sounded like his words, or coached words[.]

(*Id.* at 8). Fonseca continued,

I will say that I know I was a little out of line in coming at them guys that way Your Honor, but I didn't come at them talking out of the side of my neck saying you're going to get yours. I asked them, do you have anything to say to me personally? And when he didn't Your Honor, I got in my car and left.

* * *

I really feel I should have just took the disorderly conduct deal because that's, but the reason I didn't take it was because I don't feel I threatened these guys, and I didn't Your Honor, I just asked them what their problem was and how come they would make up lies like that.

(*Id.* at 8-9). Fonseca further asserted to the trial court that Schroeder "lied" to law enforcement because he was angry with Fonseca because "a couple of [his] friends stepped on [Schroeder's] fresh brick." (*Id.* at 9). Fonseca said, "I know that it

stemmed from there because the very next day there, but I apologized and said I did not know my friends were going to step on your bricks like that guys." (*Id.*).

**{¶30}** Further, Fonseca's PSI report details a pattern of a lack of remorse for his crimes. Under the heading "Defendant's Version," Fonseca responded to "the PSI Questionnaire,"

> "I confronted the guys who said lies about my family and me, I asked them what their problem was lieing [sic] about my family-They said I threatened them. But I did NOT! * * * I really feel I was done injustice because all I did was ask why they said lies about me and my family. There was no future testamony [sic] from these guys, so I couldn't have made future threats."

(Emphasis sic.) (PSI at 5). The PSI report also states,

> In [Fonseca's] 2010 PSI, the writer noted, "The offender's attitude was terrible as he blamed everyone except himself." The undersigned can say that [Fonseca's] attitude has not changed a bit as some of his convictions from twenty years ago were explained away as not his fault. [Fonseca] has never shown an attitude that would allow him to successfully complete community control.

(PSI at 17). In addition, the PSI report reflects that the "[o]ffense was committed while under **probation**, community control sanction, **bond or personal**

**recognizance**" and that Fonseca was "out on bail before trial or sentencing, under felony Court sanction, or under post-release control, or parole when offense was committed." (Emphasis sic.) (PSI at 19-20).

**{¶31}** Therefore, the record clearly and convincingly supports the trial court's conclusion that Fonseca is likely to commit future crimes. As such, it was within the trial court's discretion to conclude that the imposition of a prison sentence is "the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(A). *See also* R.C. 2929.13(C) ("in determining whether to impose a prison term as a sanction for a felony of the third degree * * * the sentencing court shall comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code and with section 2929.12 of the Revised Code").

**{¶32}** Accordingly, we will not reverse Fonseca's sentence because it is within the permissible statutory range, the trial court properly considered the criteria found in R.C. 2929.11 and 2929.12, and the record clearly and convincingly supports the trial court's findings under R.C. 2929.11 and 2929.12. *See Maggette*, 2016-Ohio-5554, at ¶ 36.

**{¶33}** Fonseca's second assignment of error is overruled.

{¶34} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J., concurs.**

**ROGERS, J., concurs in Judgment Only.**

**/jlr**